2015 Ark. 148

**Becky FURNAS, Individually and as a Representative of all similarly situated Taxpayers who Pay Ad Valorem School Taxes for the Support of the Fountain Lake School District; Fountain Lake School District; Al Larson, individually and as a Representative of all similarly situated Taxpayers who Pay Ad Valorem School Taxes for the Support of the Eureka Springs School District; and Eureka Springs School District, Appellants,**

**v.**

**Thomas W. KIMBRELL, Commissioner of the Arkansas Department of Education, in his official capacity only; Arkansas Department of Education; Charles Robinson, Treasurer of the State of Arkansas, in his official capacity only, Appellees.**

**No. CV–14–12**

Supreme Court of Arkansas.

Opinion Delivered April 9, 2015

Hatfield, Sayre & Brockett, Little Rock, by: Eugene G. Sayre and Christopher D. Brockett, for appellants.

Dustin McDaniel, Att'y Gen., by: Scott P. Richardson, Sr. Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART,
Associate Justice

The appellees[1] (the School Districts) in *Kimbrell v. McCleskey*, 2012 Ark. 443, 424 S.W.3d 844 (the first appeal), are now before this court as appellants seeking to reverse an adverse order of the circuit court following our opinion and mandate in the first appeal. On appeal, the School Districts argue: (1) the circuit court erred, on remand, in determining that it lacked subject-matter jurisdiction to entertain and grant the post-remand mandatory injunctive relief sought by the School Districts in the form of ordering the Arkansas Department of Education (ADE) to release to the School Districts $615,439 in appropriated 98% guaranteed Uniform Rate of Tax (URT)[2] adjustment funds that had been released by the ADE in all prior school years and which the ADE had illegally "set off" against what the ADE computed as "excess URT funds" in the 2010–2011/2011–2012 school years; (2) the circuit court erred in its July 29, 2013 order on remand and the subsequent rehearing order that was deemed denied because it did not fulfill the letter and the spirit of the mandate and opinion of this court in the first appeal by failing to grant the specific post-remand relief requested by the School Districts, based on what the circuit court referred to as the law of the case; (3) on April 2, 2013, the General Assembly substantially amended Arkansas Code Annotated section 6–20–2305 by passage of Act

---

1. Originally, Bob Allen McCieskey, individually and as a representative of all similarly situated taxpayers who pay ad valorem taxes for the support of the Fountain Lake School District, Rusty Windle, individually and as a representative of all similarly situated taxpayers who pay ad valorem taxes in support of the Eureka Springs School District, as well as the school districts themselves, (the School Districts), sued the appellees, the Commissioner of the Arkansas Department of Education, Thomas W. Kimbrell, in his official capacity, the Arkansas Department of Education itself, then Arkansas State Treasurer Martha Shoffner in her official capacity, and others (collectively referred to hereinafter as the ADE). On the current appeal, Becky Furnas has been substituted for Bob McCieskey, and Al Larson has been substituted for Rusty Windle. Also, Charles Robinson has been substituted for Martha Shoffner.

2. Article 14, § 3(b)(1) of the Arkansas Constitution established the URT, which is a statewide 25–mill property tax. Arkansas Code Annotated section 26–80–101 levies the 25–mill URT. Because URT revenues are the cornerstone of school funding, the State, through the ADE, provides aid to school districts out of general revenues if URT collections plus categorical funding fails to provide the school district with the foundation funding-amount set by statute on a biannual basis. Ark. Code. Ann. § 6–20–2305. This aid is what is referred to as the 98% URT adjustment rate funding.

557 of 2013, but such legislative action did not negate the legal obligation of the ADE to release the appropriated funds owed to the School Districts for the school years 2010–2011 and 2011–2012; (4) the issue of the School Districts' claims for 98% guaranteed URT adjustment funds was argued before both the circuit court and the supreme court in the first appeal, as shown by documentary evidence, oral testimony, and briefs filed by both parties in both courts and, accordingly, this issue was not waived by the School Districts. We affirm.

### A. Procedural History Prior to the First Appeal

This case began when the ADE attempted to recover $1,387,367 from the Fountain Lake School District and $824,916 from the Eureka Springs School District, believing that these sums were an overpayment of state funds.[3] The ADE proceeded on the assumption that the URT levy was a state tax and that the URT levy was enacted to provide the bulk of the revenue for "foundation funding," a statutorily imposed, minimum-per-student income stream that was guaranteed to each school district. The ADE believed that any amount of the URT revenue collected in a school district that exceeded the foundation-funding amount could be recouped and redistributed to fund other school districts.

The School Districts disagreed and filed suit against the ADE, seeking declaratory and injunctive relief. In part, their complaint asked for a mandatory injunction requiring the ADE to release all federal and state funds that they were due. The ADE responded by filing a motion to dismiss, which was denied, and the circuit court granted partial summary judgment in favor of the School Districts. In pertinent part, the circuit court made the following findings of fact:

9. Pursuant to A.C.A. § 6–20–2305(a)(1)(A), the State provides "foundation funding aid" to the public school districts. Such section provides:

For each school year, each school district shall receive state foundation funding aid computed as the difference between the foundation funding amount pursuant to subdivision (a)(2) of this section and the sum of ninety-eight percent (98%) of the uniform rate of tax multiplied by the property assessment of the school district plus the miscellaneous funds of the school district.

10. A.C.A. § 6–20–2306, enacted in 2003 states:

(a) If the Department of Education determines that an overpayment has been made to a school district under any appropriation authorized by this subchapter, the department is authorized to:

(1) Withhold the overpayment from subsequent state funding;

(2) Transfer the amount withheld for the overpayment to the line item appropriation from which the overpayment was originally made; and

(3) Request a refund from the school district in the amount of the overpayment.

(b) The school district shall comply as directed by the department.

While the circuit court found that the URT levy was a "state tax," it nonetheless stated in its conclusions of law that, in accordance with Arkansas Code Annotated section 26–80–101(b)(1)(A), the Treasurer was

---

**3.** The ADE also sought to recoup $232,279 from the Amorel School District and $112,284 from the Westside School District, but these school districts did not participate in this lawsuit.

required to, and had been, receipting and distributing all URT monies and that

> [t]he payment by the Treasurer of the 25–mill URT revenues in accordance with the unambiguous directives of A.C.A. § 26–80–101 is not an overpayment of "any appropriation authorized by this subchapter" within the parameters of the ADE's authority under A.C.A. § 6–20–3606.

In the circuit court's judgment, it enjoined the ADE from seeking repayment of "any portion of the 25–mill URT tax revenues assessed and levied by Article 14, § 3(b)(1) of the Arkansas Constitution."[4] Further, the circuit court enjoined the ADE from "levying, assessing, withholding, or setting off from or against any state or federal monies belonging to the plaintiff school districts for repayment of any portion of the 25–mill URT revenue required by Article 14, § 3(b)(1) of the Arkansas Constitution." Notably, the circuit court did not find that the School Districts were entitled to the 98% guaranteed URT adjustment funds.

The School Districts subsequently moved to have the ADE found in contempt. They asserted that the ADE had "willfully" and "blatantly" refused to comply with the circuit court's orders because it "refused to release and immediately send to these two (2) Plaintiff school districts, after entry of the Circuit Court's Judgment on September 20, 2011, *all* amounts of state and federal funds that have been 'withheld' or 'setoff by these ADE Defendants." (Emphasis in the original.) In addition to the ADE's withholding of categorical funding to recoup overpayment of state funds, the School Districts specifically cited the refusal by the ADE to release the URT adjustment

funding. In response, the ADE noted that foundation funding was made up of two components: URT and Foundation Funding Aid. It stated that foundation-funding aid was paid "wholly out of state general revenue" and was intended only to assure that basic per-student foundation funding was being met. The ADE asserted that foundation-funding aid was not addressed by the circuit court's orders.

In its January 20, 2012 order, the circuit court declined to hold the ADE in contempt. Although the circuit court found that the ADE's decision to withhold categorical funding violated its orders, the court excused the conduct because its order lacked clarity. The circuit court also specifically ruled against the School Districts' request for the URT adjustment funding. It stated:

> Plaintiffs also requested that the Court hold the ADE Defendants in Contempt for not paying to the school districts additional general revenue under what is known as the 98% collection rate adjustment at Arkansas Code Annotated section 6–20–2305(a)(4). The Court denies this requested relief.

The School Districts sought rehearing, but their motion to reconsider was denied by the circuit court. The ADE filed an amended notice of appeal on January 20, 2012, that additionally designated "the pleadings filed subsequently to the September 20, 2011 Judgment up to and through the date of the Amended Notice of Appeal."

## B. The First Appeal

In the first appeal, this court addressed three arguments. Two arguments were raised by ADE on direct appeal: (1) the

---

4.  (b)(1) There is established a uniform rate of ad valorem property tax of twenty-five (25) mills to be levied on the assessed value of all taxable real, personal, and utility property in the state to be used solely for maintenance and operation of the schools.

circuit court erred in finding that ADE was not authorized by the legislature to recoup and redistribute any URT revenues received from the School Districts that were in excess of the foundation-funding amount; and (2) the circuit court erred in finding that ADE lacked the authority to withhold monies from the School Districts where they had submitted deficient budgets that erroneously budgeted as ongoing revenue the amounts of URT revenue in excess of the foundation-funding amounts. 2012 Ark. 443, at 2–3, 424 S.W.3d 844, 846. The School Districts raised one argument on cross-appeal: the circuit court erred in finding that the revenues generated by the URT were state-tax revenues. *Id.* at 3, 424 S.W.3d at 846. It is important to note that, in the first appeal, this court specifically acknowledged that the ADE "further appeals from the circuit court's order [₇of January 20, 2012, in which the circuit court declined to hold ADE in contempt and clarified its prior judgment." *Id.* at 2, 424 S.W.3d at 846.

In resolving the arguments raised on appeal, this court held that the (1) the ADE lacked authority to redistribute excess URT[5] revenue from one school district to another; (2) budgets set by school districts that included URT revenue in excess of the foundation funding amounts were not deficient; and (3) URT was not a state ad valorem tax. The School Districts' entitlement to 98% guaranteed URT adjustment funding was not directly argued by either party on appeal. Indeed, the School Districts expressly stated in their cross-appeal that "the amount of lo-

cally levied, generated, and collected 25 mill URT ad valorem school property tax proceeds are sufficient to meet these constitutional and statutorily set goals [of an equal opportunity for an adequate education] ... without state assistance." Moreover, in this court's written opinion, we stated:

> For the School Districts here, however, their URT revenues generated more than the foundation-funding amount, therefore the State was not required to provide any foundation-funding aid to them. It is the URT revenues of the School Districts in excess of $6,023 that are at issue in the instant case.

2012 Ark. 443, at 11, 424 S.W.3d 844, 850.

Although the ADE did acknowledge in a footnote that this argument had been made [₈to the circuit court,[6] this acknowledgment was made in the context of the ADE's argument that the School Districts were not entitled to retain the amount of URT collections that exceeded the foundation-funding amount. It is also noteworthy that, in the argument presented in their appellees' brief, the School Districts asserted that the circuit court "enjoined the ADE Appellants from attempting to set off amounts of categorical funds or 98% guaranteed URT monies provided for in Ark. Code Ann. § 6–20–2305(a)(4)(A), because the General Assembly had legislatively addressed this very issue in enacting A.C.A. § 26–80–101(a), (b), and (c)." The School Districts made this assertion not as argument, but as a matter of historical

---

**5.** The URT funds collected within a school district are required to be immediately remitted to that school district. Ark.Code Ann. § 6–20–2305. The General Assembly also created a guaranteed minimum amount of funding for each school district called "foundation funding," which is a minimum, per-student level of funding that is set biannually. *Id.*

**6.** The footnote stated: "In fact, [the School Districts] went so far as to allege that the 98% actual collection adjustment (Ark. Code Ann. § 6–20–2305(a)(4)) required the State to pay these Districts even more revenue on top of the disparity caused by their URT revenue in excess of the Foundation Funding amount."

fact. Even so, no circuit court order expressly ordered the ADE to disburse to the School Districts the 98% guaranteed URT adjustment funding.

### C. Proceedings After Remand

Upon remand, the School Districts filed a motion requesting that the circuit court order the ADE to release to them the 98% guaranteed URT adjustment funds. In opposing the motion, the ADE asserted that the opinion in the first appeal did not specifically require the ADE to release any of the 98% guaranteed URT adjustment funds. At the hearing on the School Districts' motion, although no witnesses were called, the circuit court clearly found a distinction between "categorical funding," which covered such things as school lunches, and the "98% guaranteed URT adjustment funds." The circuit court confirmed that all the categorical funding previously withheld by the ADE had been disbursed to the School Districts. The circuit court entered an order correcting its previous finding that the URT levy was a state tax, and described it as a "one-of-a-kind tax, a school district tax, approved by the voters of the State of Arkansas," and denied the School Districts any further relief.

The School Districts filed a motion asking the circuit court to reconsider the denial of its request to order the ADE to disburse the 98% guaranteed URT adjustment funding. In their motion, the School Districts again asserted that the ADE had illegally set off the "98% guaranteed URT supplemental funds" for the 2010–2011 and 2011–2012 school years. They contended that a total of $391,551 was due the Fountain Lake School District and $223,888 was due the Eureka Springs School District. The ADE opposed the reconsideration motion, asserting that the School Districts were barred by the law-of-the-case doc-trine from seeking the 98% guaranteed URT adjustment funds. The motion to reconsider was deemed denied. The School Districts filed this appeal.

### D. Standard of Review

When the issue before us on appeal is whether, on remand, the circuit court has followed our prior decision in the case, we review the actions of the circuit court to determine whether our directions, as expressed by the opinion and mandate, have been "followed exactly and placed into execution." *City of Dover v. Barton*, 342 Ark. 521, 526, 29 S.W.3d 698, 699 (2000). The jurisdiction of the trial court is confined to the appellate court's directions. *Id.*

### E. Arguments on Appeal

On appeal, the School Districts first argue that the circuit court erred, on remand, in determining that the circuit court lacked subject-matter jurisdiction to entertain and grant the post-remand mandatory injunctive relief sought by the School Districts in the form of ordering the ADE to release to these school districts $615,439 in appropriated 98% guaranteed URT adjustment funds that had been released by the ADE in all prior school years and which the ADE had illegally "set off" against what the ADE computed as "excess URT funds" for the two school years in question. They contend that the phrase in the mandate requiring the dispersal of "any and all withheld funds" necessarily included the 98% guaranteed URT adjustment funds, because it would be "illogical" to order the disbursement of one category of appropriated aid and exempt from disbursement another category of appropriated aid, when both were authorized by Act 272 of 2007. This argument is not persuasive.

In this case, under the mandate rule, the circuit court was bound by the holdings in the first appeal as the law of the case and lacked the authority to vary it, or judicially examine it, for any other purpose than to put it into execution. *Johnson v. Bonds Fertilizer, Inc.*, 375 Ark. 224, 289 S.W.3d 431 (2008) (citing *Wal–Mart Stores, Inc. v. Regions Bank Trust Dep't*, 356 Ark. 494, 156 S.W.3d 249 (2004)). It had no power to grant further relief as to any matter decided by this court. *Id.* In the first appeal, the School Districts failed to argue to this court that the circuit court erred in its ruling with regard to the 98% guaranteed URT adjustment funds. While the School Districts may have believed that the circuit court had already awarded them these funds, there is no such express award in any of the circuit court orders. Furthermore, the circuit court's judgment stated that, "All other causes of action and claims for relief of the plaintiffs not specifically addressed herein are denied."

To the extent that the 98% guaranteed URT adjustment funds are mentioned at all by the circuit court in any of its orders, the award of these funds is expressly denied in the January 20, 2012 order where the circuit court declined to find the ADE in contempt. In that same order, the circuit court clarified its ruling regarding which funds it had enjoined the ADE from withholding. It stated, "The Court intended, by the language of paragraph 8 of the Judgment entered herein on September 20, 2011, that no categorical funding amounts would be withheld by the ADE." In the order's next paragraph, the circuit court further clarified that it did not intend to treat categorical funding and the 98% guaranteed URT adjustment funding the same. It stated,

> Plaintiffs also requested that the Court hold the ADE Defendants in Contempt for not paying to the School Districts

additional general revenue under what is known as the 98% collection rate adjustment at Arkansas Code Annotated section 6–20–2305(a)(4). The Court denies this requested relief.

The different ways in which the circuit court treats categorical funding and the 98% guaranteed URT adjustment funds is telling, as both sources of money were withheld by the ADE. With regard to the categorical funding, the circuit court found that the ADE had wrongfully withheld these funds from the School Districts. It stated, however, that it declined to hold the ADE defendants in contempt because it found its September 20, 2011 judgment to be unclear. Nonetheless, the ADE was ordered to release the categorical funding. With regard to the ADE's retention of the 98% guaranteed URT adjustment funds, which it described as "additional general revenue," the circuit court not only refused to hold the ADE in contempt, it also denied the School Districts' request for it to order the ADE to disburse this money. The School Districts could have appealed this ruling in the contempt order, but did not.

For this reason, the first appeal did not address the issue of the 98% guaranteed URT adjustment funding. This court stated that the appeal was about the School Districts' excess URT collections, not funds taken from the State's general revenues to bring the School Districts per-pupil revenues up to the foundation-funding amount, which this court generally referred to as "foundation funding aid." 2012 Ark. 443, at 10, 424 S.W.3d at 850. Consequently, because neither the mandate nor the opinion in the first appeal state that the School Districts are entitled to URT adjustment funds, the circuit court did not err in finding that it lacked the authority to order that those funds be disbursed by the ADE.

As to the School Districts' contention that it was "illogical" to treat the appropriated funds referred to in Act 272 of 2007 differently, we note that the eight-page Act addressed and amended virtually all of the state's school-funding formula. It is only logical for the judiciary to treat different categories of appropriations as separate entities in a manner consistent with how they were treated by the General Assembly.

■ The School Districts next argue that the circuit court erred in its order and "deemed denied" order on remand when, based on the law of the case, it did not fulfill the letter and the spirit of the mandate and opinion of this court in the first appeal when it failed to grant the specific post-remand relief requested by the School Districts. We disagree.

■ The law-of-the-case doctrine prevents an issue already decided from being raised in a subsequent appeal and includes issues that could have been appealed and were not. *Kelly v. Kelly,* 2014 Ark. 543, 453 S.W.3d 655. As previously noted, the School Districts did not appeal the circuit court's adverse ruling regarding the 98% guaranteed URT adjustment funds. When the circuit court was confronted with the issue of the School Districts' entitlement to 98% guaranteed URT adjustment funds, there was nothing in our opinion and the mandate that affected its decision denying these funds to the School Districts. Accordingly, the circuit court did not err when it found that the School Districts were barred from raising this issue on remand. Likewise, the School Districts are barred from raising the issue in this appeal. *Id.*

For their third point on appeal, the School Districts argue that when the General Assembly substantially amended Arkansas Code Annotated section 6–20–2305 by passage of Act 557 of 2013, on April 2, 2013, that legislative action did not negate the legal obligation of the ADE to release the appropriated funds owed these two school districts for the school years 2010–2011 and 2011–2012. Act of Apr. 2, 2013, No. 557, 2013 Ark. Acts 2007. The Act added subparagraph (a)(4)(C), which states:

> The Department of Education shall not distribute to a school district the funds under subdivision (a)(4)(A)(I) of this section if, regardless of the school district's tax collection rate, the school district's net revenues meet or exceed the foundation funding amount set forth in § 6–20–2305(a).

Ark.Code Ann. § 6–20–2305(a)(4)(C) (Repl. 2013). The ADE argues that the passage of Act 557 of 2013 renders the issue moot.

We decline to hold that the passage of Act 557 of 2013 renders this issue moot. However, for the School Districts to prevail on this point, we would have had to found merit in one or both of their prior two arguments. Because we have not, it is unnecessary for us to address this argument in this appeal.

For their final point, the School Districts argue that the issue of the School Districts' claims for "98% guaranteed URT adjustment funds" was argued before both the circuit court and this court in the first appeal, as shown by documentary evidence, oral testimony, and the briefs filed by both parties in the circuit court and in this court. They contend that the presence of the issue in these forms indicates that it was not waived by the School Districts. They point to portions of the abstract and addendum where the issue of their entitlement to the 98% guaranteed URT adjustment funds was raised to the circuit court and assert that they referenced these instances where it was argued to the circuit court in several places in

their appellate brief. In so doing, the School Districts argue that this court should be satisfied that the presence of an argument in the circuit-court record and fleeting references to the 98% guaranteed URT adjustment funding constituted an argument on appeal. The School Districts likewise also assert that presentation of this issue in this way meant that it was not "waived" in the first appeal.

We agree that the issue was raised to the circuit court; it decided the issue adversely to the School Districts. The School Districts, however, did not challenge the circuit court's ruling in the first appeal. Moreover, this court noted that the School Districts were not entitled to any additional general revenue because their URT collections exceeded the foundation-funding amount. *McCleskey*, 2012 Ark. 443, at 10, 424 S.W.3d 844, 850. We decline to hold that the mere presence of an issue in any form is the same as making an appellate argument. In *Daniel v. Spivey*, 2012 Ark. 39, 386 S.W.3d 424, this court recently held that even listing an issue in the heading of an appellant's argument on appeal was insufficient for this court to consider it an appellate argument when the issue is not further discussed in the "body" of the brief In the absence of any argument, the point is considered waived. *Id.*; *Housing Authority of City of Texarkana v. E.W. Johnson Constr. Co.*, 264 Ark. 523, 573 S.W.2d 316 (1978).

Affirmed.