Cite as 2020 Ark. App. 412

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-19-807

| | |
|---|---|
| MITCHELL "MITCH" WINE<br>APPELLANT<br><br>V.<br><br><br>DORALEE CHANDLER AND LESLIE RUTLEDGE, IN THEIR CAPACITIES AS DIRECTOR OF ALCOHOLIC BEVERAGE CONTROL DIVISION OF THE ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION AND ATTORNEY GENERAL OF ARKANSAS, RESPECTIVELY; AND PUBLIC CONSULTING GROUP, INC.<br>APPELLEES | **Opinion Delivered:** September 16, 2020<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, NINTH DIVISION [NO. 60CV-19-510]<br><br>HONORABLE MARY SPENCER MCGOWAN, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## KENNETH S. HIXSON, Judge

Appellant Mitchell Wine, pro se, appeals from an order of the Pulaski County Circuit Court that dismissed his complaint and amended complaint against appellees Doralee Chandler and Leslie Rutledge, in their capacities as Director of the Alcoholic Beverage Control Division of the Arkansas Department of Finance and Administration and the Attorney General of Arkansas, respectively (the State appellees), and appellee Public Consulting Group, Inc. (PCG).[1] On appeal, Wine argues that the trial court erred in

---

[1]This is the second time this case has been before us. In the first appeal, we remanded for supplementation of the record and ordered rebriefing because the abbreviated record filed by Wine did not contain all the documents needed to decide the case. *See Wine v.*

dismissing his complaints against the appellees. We affirm the dismissal of Wine's complaints against the State appellees, and we reverse the dismissal of Wine's amended complaint against PCG.

This case arose from Wine's application for a medical-marijuana dispensary license, and the case has an extensive procedural history. The Alcoholic Beverage Control Division (ABC) and the Medical Marijuana Commission (MMC) entered into a contract with PCG, a private corporation from Boston, Massachusetts, to review and score medical-marijuana dispensary applications. After PCG scored the applications, PCG reported the results to MMC. MMC would subsequently determine which of the applicants were awarded the marijuana-dispensary licenses. Wine was one of several applicants. MMC did not award Wine a license. Wine was disappointed with the score given to him by PCG, and he also questioned a higher score given to a competitor who was awarded a license. Wine decided to investigate.

Wine had several communications with MMC and PCG early in his investigation. According to Wine, PCG declined to provide him with any application or scoring information, instead directing Wine to MMC. Wine alleged that he was advised by MMC that the score sheets had been transmitted to the Attorney General and that the Attorney General was the point of contact. Wine alleged that he contacted the Attorney General's

---

*Chandler*, 2020 Ark. App. 262 (*Wine I*). The record has now been supplemented as ordered. However, we note that in *Wine I,* we admonished the parties that no new arguments may be advanced on rebriefing. In violation of this order, Wine's substituted brief contains an argument section that has been materially changed and which includes additional arguments not raised in his original brief. In light of our prior directive, we will limit our review to only the arguments Wine raised in his original brief.

office and was advised that the Attorney General was not the custodian of the records requested; furthermore, if any of the records were within the custody of the Attorney General, the records were exempt from the Freedom of Information Act (FOIA). Wine then prepared and mailed FOIA requests to the Attorney General, ABC, MMC, and PCG. In those requests, Wine asked for certain information related to the scoring of his application as well as certain information relating to the scoring of the competitor that received the license, a copy of the competitor's application, and chain-of-custody information for the scores generated by PCG. After more discussions, Wine subsequently received a redacted copy of the competitor's application from ABC/MMC,[2] but he was unsuccessful in obtaining much of the information he was seeking. Wine then decided to file a lawsuit.

On January 28, 2019, Wine filed a complaint in the Pulaski County Circuit Court against Chandler, in her capacity as the Director of the ABC; Rutledge, in her capacity as Attorney General; and PCG. Wine's complaint alleged FOIA violations against each of the defendants, and he asked that the defendants be ordered to comply with his FOIA requests. A flurry of court filings followed, the substance of which is set forth below:

> FEBRUARY 6, 2019:[3] PCG filed a motion to dismiss Wine's complaint, asserting that it is a private entity not subject to the FOIA. As such, PCG alleged that Wine failed to state facts upon which relief can be granted pursuant to Ark. R. Civ. P. 12(b)(6).

> FEBRUARY 15: Wine filed a response to PCG's motion to dismiss.

---

[2]Although the parties refer to these entities collectively as ABC/MMC, the precise relationship between ABC and MMC is not clear from the record. However, from the parties' representations herein, it is evident that ABC has authority over the FOIA records of MMC.

[3]Because all the relevant events at the trial level occurred in 2019, we will not include the year for any dates hereinafter referenced.

FEBRUARY 22: PCG filed a reply to Wine's response to motion to dismiss.

FEBRUARY 25: Wine filed a motion to strike PCG's reply to Wine's response, arguing, among other things, that PCG failed to attach exhibits in support of its reply.

FEBRUARY 26: PCG filed a response to Wine's motion to strike.

FEBRUARY 27: Wine filed a motion for judgment on the pleadings against PCG.

FEBRUARY 28: The State appellees filed a motion to dismiss Wine's complaint on the basis of insufficient process and insufficient service of process. The alleged deficiencies included a defective summons under Ark. R. Civ. P. 4(b) as well as defective service because it was without a return receipt requested and delivery restricted to the addressee as required by Ark. R. Civ. P. 4(g)(1)(A)(i). The State appellees attached exhibits to its motion in support of its claim. In the alternative, the State appellees argued that Wine failed to state a claim upon which relief can be granted.

MARCH 4: Wine filed a response to the State appellees' motion to dismiss.

MARCH 13: PCG filed a response to Wine's motion for judgment on the pleadings.

At this point, there were three potentially dispositive motions pending before the trial court: PCG's motion to dismiss, Wine's motion for judgment on the pleadings against PCG, and the State appellees' motion to dismiss. Wine filed an amended complaint on May 3. In Wine's amended complaint, he again alleged FOIA violations, and he added several additional claims against all appellees, including breach of contract, breach of fiduciary duty, fraud in insolvency, fraudulent transfer, and common fraud. Among Wine's specific allegations were that the FOIA mandated disclosure of the information he had requested; that PCG breached its contract with ABC/MMC by failing to score all of Wine's application materials; that all defendants breached their fiduciary duty by upholding a contract mandating destruction of scoring materials subject to the FOIA; that PCG committed fraud in insolvency by failing to produce a comprehensive score for all application materials

4

submitted by Wine; that PCG committed a fraudulent transfer when it conveyed Wine's application score to ABC/MMC when it knew it had not been scored according to the rules and the contract; and that all the defendants perpetuated common fraud because applications for cannabis dispensaries were likely not scored by PCG at all, and because the defendants failed to investigate the fraudulent information contained within the application of Wine's competitor who was awarded a license. In his amended complaint, Wine sought $10 million in damages against the cumulative defendants. Wine's amended complaint was served on each of the appellees through the eFlex filing system.

While the three aforementioned motions pertaining to the original complaint were still pending, on May 23, PCG filed a motion to dismiss Wine's *amended* complaint. PCG's motion was based on its claim that pursuant to Arkansas Rule of Civil Procedure 12(b)(6), the amended complaint failed to state facts upon which relief can be granted. In its motion and accompanying brief, PCG asserted that it is a private entity not subject to the FOIA; that there was no valid breach-of-contract claim because, in essence, there was no privity of contract between PCG and Wine; that PCG had no fiduciary duty to Wine; that fraud in insolvency and fraudulent transfer were based on statutory provisions inapplicable to Wine's allegations against PCG; and that Wine's common-fraud claim failed because there was no allegation that PCG made a knowingly false representation with the intent to induce Wine's reliance thereon.

On May 28, the State appellees filed a motion to dismiss Wine's *amended* complaint. It should be noted that Wine did not have another summons issued and served upon the State appellees. Instead, Wine relied on the service of process of his original complaint

against the State appellees and served the amended complaint on the State appellees through the eFlex filing system. The State appellees argued, as it did in its motion to dismiss Wine's *original* complaint, that the summonses served on them were defective because the summonses did not contain all the information required by Rule 4(b) of the Arkansas Rules of Civil Procedure. Specifically, the State appellees asserted that the summonses failed to contain their addresses, nor did they contain the plaintiff's name and address. The State appellees also again argued that service was defective because service was without a return receipt requested and delivery restricted to the addressee as required by Rule 4(g)(1)(A)(i). The State appellees claimed that because of the allegedly defective summonses and service, the trial court lacked personal jurisdiction over them because service of the amended complaint under Ark. R. Civ. P. 5 would not suffice when Rule 4 had never first been met.

In addition to the alleged service defects, the State appellees' motion to dismiss Wine's amended complaint made alternative claims for dismissal. The State appellees argued that the amended complaint failed to state facts upon which relief can be granted because Wine failed to state a FOIA claim against the Attorney General. The State specifically argued that the Attorney General was not the custodian of the records sought by Wine and that any copies of records it might possess would be exempt from disclosure as working papers and correspondence of the Attorney General. As to Wine's remaining claims, the State appellees adopted and incorporated the arguments made in PCG's motion to dismiss for failure to state facts. The State appellees also asserted that Wine's claims for damages against them were barred by sovereign and statutory immunity.

6

On May 30, instead of responding to the merits of the motions to dismiss the amended complaint filed by the State appellees and PCG, Wine filed a motion to strike and for default judgment. In that motion, Wine alleged that PCG's motion to dismiss his amended complaint should be struck as being untimely. Wine argued that although PCG's motion was filed on May 23, which would have been timely, that filing contained the wrong case number on the file stamp and was thus ineffective.[4] Wine alleged further that because the State appellees' motion to dismiss in part incorporated by reference the arguments in PCG's untimely motion to dismiss, the State appellees' motion to dismiss should be struck in its entirety as well. Wine also asked for a default judgment in the amount of $88 million against PCG. At the conclusion of Wine's motion, he requested that if the court did not grant his motion to strike or motion for default judgment, he be granted appropriate time to address any pleadings not struck by the trial court.

On June 19, the trial court held a hearing wherein each of the above motions was argued by the parties. On August 5, the trial court entered an order of dismissal without prejudice, from which Wine now appeals.

In the trial court's August 5 order, it made specific rulings on the following motions.[5] The trial court granted PCG's motion to dismiss Wine's *original* complaint pursuant to Rule

_____

[4]When PCG filed its motion to dismiss the amended complaint on May 23, the circuit clerk mistakenly file-stamped the motion with the wrong case number. This mistake by the clerk was subsequently corrected.

[5]The trial court denied Wine's motion to strike PCG's reply to Wine's response to PCG's original motion to dismiss and denied Wine's motion for judgment on the pleadings. These two motions are not discussed further herein as they are not relevant to the issues raised on appeal.

12(b)(6) for failure to state facts upon which relief can be granted. The trial court granted PCG's motion to dismiss Wine's *amended* complaint on the grounds that Wine failed to respond to the motion. Finally, the trial court granted the State appellees' motion to dismiss for failure to properly serve the State appellees.[6] Although the trial court did not specify whether it was dismissing Wine's complaint or amended complaint as it pertains to the State appellees for lack of proper service, it appears that it dismissed both.[7]

In this appeal, Wine challenges the dismissal of his claims against the State appellees, asserting that the trial court erred in finding a lack of service because the State appellees were "parties to the original complaint" and were served with the amended complaint via the eFlex filing system in accordance with Ark. R. Civ. P. 5(b)(2). Wine further argues that the trial court erred in dismissing his amended complaint against PCG for his failure to respond to the motion to dismiss, asserting that no response was required and that, at any rate, he did respond when he filed his May 30 motion to strike and for default judgment.

I. *Discussion of the Claims Against the State Appellees*

We begin by reviewing the trial court's dismissal of Wine's claims against the State appellees for defective service of process. We review a trial court's factual conclusions regarding service of process under a clearly erroneous standard, but when a complaint is

_____

[6]In granting the State appellees' motion, it is unclear whether the trial court intended to limit its grounds to dismiss to only insufficient service of process. The State appellees' motion argued both insufficient process and insufficient service of process. Because we are discussing Ark. R. Civ. P. 4(k) below, we include a discussion of both insufficient process and insufficient service of process.

[7]We observe that the trial court did not rule on Wine's May 30 motion to strike and for default judgment. Because the trial court has not ruled on this motion, there is no ruling for us to review. *See Ladd v. PS Little Rock, Inc.*, 2016 Ark. App. 506.

dismissed on a question of law, we conduct a de novo review. *McMahan v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 590, 446 S.W.3d 640.

Arkansas law is long settled that service of valid process is necessary to give a court jurisdiction over a defendant. *Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.*, 353 Ark. 701, 120 S.W.3d 525 (2003). Our case law is equally well settled that statutory service requirements, being in derogation of common-law rights, must be strictly construed and compliance with them must be exact. *Id.* The supreme court has held that the same reasoning applies to service requirements imposed by court rules. *Carruth v. Design Interiors, Inc.*, 324 Ark. 373, 921 S.W.2d 944 (1996). More particularly, the technical requirements of a summons set out in Ark. R. Civ. P. 4(b) must be construed strictly, and compliance with those requirements must be exact. *Thompson v. Potlatch Corp.*, 326 Ark. 244, 930 S.W.2d 355 (1996). Our service rules place an extremely heavy burden *on the plaintiff* to demonstrate that compliance with our rules has been had. *Williams v. Stant U.S.A. Corp.*, 2015 Ark. App. 180, 458 S.W.3d 755. Pursuant to Ark. R. Civ. P. 4(i), it is mandatory for the trial court to dismiss the action without prejudice if service is not made within 120 days of filing the complaint and no motion to extend is timely made. *Smith*, *supra*.

Although neither party raises the issue, for clarification of our analysis herein, we are compelled to address a recent revision to Rule 4, which relaxed our existing process and service of process standards if certain requirements are met. Effective January 1, 2019, the Arkansas Supreme Court promulgated Ark. R. Civ. P. 4(k), which relaxed the traditional

*strict-compliance* standard applicable to these rules with a *substantial-compliance* standard.[8] However, by the express terms of the rule, this relaxation to a substantial–compliance standard only applies to cases where the defendant actually received notice of the complaint *and* filed a timely answer. A court rule is to be construed just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Stanley v. Ligon*, 374 Ark. 6, 285 S.W.3d 649 (2008). There is no need to resort to rules of construction when the language is plain and unambiguous. *Id.* Although the State appellees did receive notice of the original complaint and amended complaint, the State appellees did not file answers to either of those complaints; rather, they filed timely motions to dismiss pursuant to Ark. R. Civ. P. 12. According to Rule 4's plain terms, Wine cannot avail himself of the relaxed substantial-compliance standard contemplated by Rule 4(k). Therefore, he had to strictly comply with the law regarding process and service of process.

The record demonstrates, as alleged by the State appellees, that service of the complaint and summons of the original complaint upon the State appellees was defective. Arkansas Rule of Civil Procedure 4(f)(12) provides that service on a state or any of its agencies, departments, boards, or commissions subject to suit shall be on the chief executive officer, director, or chairman, any other person designated by appointment or by an applicable statute to receive service of process, or on the Attorney General of the state if service is accompanied by an affidavit of a party or the party's attorney that the officer or

---

[8]Rule 4 was revised to include subsection (k). Rule 4(k) provides that "[a]ny error as to the sufficiency of the process or the sufficiency of service of process shall be disregarded if the court determines that the serving party substantially complied with the provisions of this rule and that the defendant received actual notice of the complaint and filed a timely answer."

designated person is unknown or cannot be located. Rule 4(f)(17) provides that service on an officer or employee of a government entity listed in paragraphs (12)−(16) of this subdivision, acting in an official capacity, shall be on the officer or employee and by mailing a copy of the process as specified in subdivision (g)(1)(A)(i) of this rule to an official on whom service can be made pursuant to paragraphs (12)−(16), as applicable, and a copy to the Attorney General if a state officer or employee is sued. Rule 4(g)(1)(A)(i) provides that when service is made by mail, it must be addressed to the person to be served with a return receipt requested and delivery restricted to the addressee or the agent of the addressee. Here, the record shows that the summonses and complaint were mailed to the State appellees via certified mail without delivery restricted to the addressees or a return receipt requested in violation of Rule 4(g)(1)(A)(i). This failure rendered service of process ineffective.

In addition to the above service deficiency, the summonses issued to the State appellees were defective. Rule 4(b) prescribes the form of the summons, and it provides that a summons must contain, among other things, the address of the defendant to be served, if known, and the address of the plaintiff. Ark. R. Civ. P. 4(b)(2) & (3). The summonses mailed to the State appellees did not contain the address of the defendant or the address of the plaintiff. Our supreme court has held that service requirements imposed by our court rules must be exact, subject to the exception in Ark. R. Civ. P. 4(k), and we conclude that the trial court correctly found that Wine failed in his burden to demonstrate that he had properly served the State appellees in accordance with Rule 4.

Despite ineffective service of process of the *original* complaint, Wine argues that he successfully served the *amended* complaint upon the State appellees by utilizing the new

11

eFlex filing system, which he claims cured any defect in the service of process of the original complaint. He is incorrect. Wine simply failed to properly obtain service of process on the State appellees with the summons and the *original* complaint, which resulted in a lack of personal jurisdiction over the State appellees. Therefore, when Wine attempted to serve a copy of the amended complaint on the State appellees via the eFlex filing system, apparently pursuant to Ark. R. Civ. P. 5(b)(2), the trial court did not have personal jurisdiction of the State appellees. Without proper service of process of the State appellees under Rule 4, which is required to grant the trial court personal jurisdiction, the attempted service under Rule 5(b)(2) was ineffective and did not give the court personal jurisdiction.

Because there was no valid service of the *original* complaint on the State appellees within 120 days, the trial court did not have personal jurisdiction over the State appellees and, pursuant to Rule 4(i), the trial court was required to dismiss Wine's action against the State appellees without prejudice. Therefore, we affirm the trial court's dismissal as it relates to the State appellees.

## II. *Discussion of the Claims Against PCG*

We next turn to the trial court's dismissal of Wine's complaint and amended complaint as it relates to PCG.[9] Wine argues on appeal that the trial court erred in dismissing his amended complaint.[10]

---

[9]PCG made no argument below regarding service of process of Wine's complaint on PCG.

[10]We observe that although in the order being appealed the trial court also stated it was dismissing Wine's original complaint against PCG, this dismissal was of no consequence because Wine's amended complaint superseded his original complaint. Wine's amended complaint did not adopt or incorporate the original complaint, and it is a widely recognized

12

With respect to the trial court's dismissal of Wine's amended complaint against PCG, Wine argues that the trial court's reason for dismissal was insufficient. The sole reason given by the trial court for dismissing Wine's amended complaint against PCG was that Wine had failed to respond to the motion to dismiss. On appeal from that ruling, Wine argues that no response was required and that, at any rate, he did respond to PCG's motion to dismiss when he filed a timely motion to strike and for default judgment. Because we agree with Wine that the failure to respond to a motion to dismiss is not sufficient grounds to grant the motion, we reverse the dismissal of his amended complaint.

In PCG's motion to dismiss Wine's amended complaint, PCG argued that with respect to each of Wine's six claims, Wine had failed to state facts upon which relief could be granted pursuant to Ark. R. Civ. P. 12(b)(6). However, instead of deciding whether Wine's amended complaint stated sufficient facts to survive PCG's Rule 12(b)(6) motion, the trial court did not address the merits of the motion, and instead granted the dismissal solely because Wine had failed to file a response to PCG's assertions. This was erroneous. Arkansas Rule of Civil Procedure 6(c) provides that any party opposing a motion shall serve a response within ten days after service of the motion. However, there is no provision in the rule that if the opposing party chooses not to respond to the motion, the failure to respond is grounds to grant the motion. In a similar context, we have stated that a party's failure to file a response to a summary-judgment motion does not provide a basis to grant the summary judgment. *See Citibank, N.A. v. Carruth*, 2015 Ark. App. 704. This is because

---

doctrine that an amended complaint, unless it adopts and incorporated the original complaint, supersedes the original complaint. *Farmers Union Mut. Ins. Co., Inc v. Robertson*, 2010 Ark. 241, 370 S.W.3d 179.

13

there is no provision for a "default" summary judgment, and the summary judgment should not be entered unless the moving party has established a prima facie case of entitlement to summary judgment. *Id*. Similarly, we hold that a party's failure to respond to a motion to dismiss for failure to state facts does not entitle the moving party to dismissal and that the dismissal must instead rest upon the merits of the motion. Therefore, the trial court's dismissal of Wine's amended complaint against PCG is reversed.

For the reasons stated herein, we affirm the trial court's order dismissing Wine's claims against the State appellees. We reverse the trial court's dismissal of Wine's amended complaint against PCG and remand for further proceedings. We express no opinion on any other issue Wine presented to the trial court.

Affirmed in part; reversed and remanded in part.

HARRISON and KLAPPENBACH, JJ., agree.

*Mitchell Wine*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jennifer L. Merritt*, Sr. Ass't Att'y Gen., for separate appellees Doralee Chandler and Leslie Rutledge.

*Quattlebaum, Grooms & Tull PLLC*, by: *Michael N. Shannon*, for separate appellee Public Consulting Group, Inc.