Cite as 2021 Ark. 124

# SUPREME COURT OF ARKANSAS

No. CV–20–82

|  |  |
|---|---|
| | **Opinion Delivered** June 3, 2021 |
| STARK LIGON, AS EXECUTIVE DIRECTOR OF THE ARKANSAS SUPREME COURT COMMITTEE ON PROFESSIONAL CONDUCT<br>PETITIONER | PETITIONER'S PETITION FOR CONTEMPT,<br>AN ORIGINAL ACTION |
| V. | |
| TERESA LYNETTE BLOODMAN, ATTORNEY AT LAW, ARKANSAS BAR NO. 2005055<br>RESPONDENT | <u>DISMISSED</u>. |

**KAREN R. BAKER, Associate Justice**

This case stems from a petition for contempt filed by petitioner Stark Ligon, Executive Director of the Arkansas Supreme Court Committee on Professional Conduct, against respondent attorney Teresa Lynette Bloodman. Because our contempt powers are at issue, jurisdiction to determine this matter is pursuant to Arkansas Supreme Court Rule 6–5(a). We dismiss.

On February 5, 2020, Ligon filed a petition for contempt against Bloodman. Bloodman is the subject of a separate proceeding of disbarment currently before this court. *Ligon v. Bloodman*, D–16–301 (filed Apr. 1, 2016).[1] The petition alleged that on October 29,

---

[1]Initially, Ligon attempted to pursue this contempt action in Bloodman's disbarment case. Specifically, on December 20, 2019, Ligon filed in the disbarment case a motion to reopen trial and for permission to file a sixth amended petition for disbarment. However,

2019, Bloodman violated the March 21, 2016 order of interim suspension imposed on her Arkansas law license by engaging in the prohibited practice of law when she appeared and acted as attorney and legal counsel for a client in an administrative review hearing (Arkansas Department of Human Services (DHS) Division of Child Care and Early Childhood Education review panel). Specifically, the petition alleged that on November 6, 2019, DHS hearing officer Dara Hall contacted the Office of Professional Conduct and provided information that Bloodman had appeared on October 29, 2019, as legal counsel for a client party, Jonesboro Empowerment/Higher Learning Academy, in a case being heard before Hall and a DHS review panel. Ligon requested that Hall provide a transcript of the hearing, which he attached as an exhibit to the petition. The petition alleged that at the hearing Bloodman (1) identified herself as an attorney appearing for a client; (2) knowingly appeared as legal counsel for a client at a time when she knew her Arkansas law license was in interim–suspension status; and (3) did not disclose that her Arkansas law license had been suspended and that she was the subject of an ongoing disbarment proceeding. The following colloquies between Bloodman and Hall are relevant to the present appeal:

HALL: [W]ould you identify yourself for the record?

BLOODMAN: I'm Teresa Bloodman. I'm the representative for Jonesboro Empowerment Academy, Higher Heights Learning Academy.

. . .

HALL: All right. And, so, you are counsel for all of them?

BLOODMAN: I am representing the daycare.

_____

this request was denied by the special master of the disbarment proceeding on February 3, 2020.

. . .

| | |
|---|---|
| HALL: | So you represent – – you are counsel for Higher Heights Learning Academy? |
| BLOODMAN: | Correct. Correct. |
| HALL: | All right. |
| BLOODMAN: | Correct. They are represented by me. |
| HALL: | Let me make sure I get it clear. Representative or attorney? |
| BLOODMAN: | I am an attorney representing the daycare – – |
| HALL: | Okay. That's all I needed to know. Okay. |
| BLOODMAN: | – – on legal matters related to federal issues. I am representing that facility today on the issues related to the adverse action of the state. |
| HALL: | That's all I needed on the record is you are their attorney. That's all I needed. Thank you very much. |

On March 26, 2020, Bloodman filed a motion to dismiss the petition asserting that the summons is defective and that this court lacks subject-matter jurisdiction over this action because process was insufficient. Bloodman asserted that the summons is defective because it states, "You are hereby notified that a lawsuit has been filed against you, the relief asked is stated in the attached Petition for Disbarment." However, a petition for disbarment is not attached. With regard to process, Bloodman cited Rule 12 of the Arkansas Rules of Civil Procedure and raised the defenses of insufficiency of process or insufficiency of service of process. Specifically, with regard to service of process, Bloodman argued that it was insufficient because the process server did not serve her in accordance with Rule 4 of the

3

Arkansas Rules of Civil Procedure. Bloodman also asserted that we lack subject-matter jurisdiction due to res judicata related to any claims and orders in the pending disbarment case. Finally, Bloodman argued that she was not notified or given reasonable time to make her defense. Specifically, she argued that Ligon failed to make an accusation before notifying her of the "accusation in the foiled filing the unverified petition for contempt."

On March 27, 2020, Ligon filed his response to the motion to dismiss. Ligon admitted that the summons stated that there is a petition for disbarment attached but asserted that it was undisputed that a correct copy of the petition for contempt was attached to the summons actually served on Bloodman. In response to Bloodman's assertion that the petition for contempt was unverified, Ligon stated that the petition was properly verified by his signature as an officer of the court.

On March 31, 2020, Bloodman filed her reply in support of her motion to dismiss and again argued that the summons mistakenly states that a petition for disbarment is attached. Additionally, Bloodman argued that the summons does not state the address of the plaintiff's attorney. Further, Bloodman again argued that service of process was insufficient.

On April 16, 2020, we appointed a special master for the contempt proceedings and denied Bloodman's motion to dismiss.

On April 27, 2020, Bloodman filed her answer to the petition for contempt in which she repeated the arguments set forth in her motion to dismiss and in her reply.

On April 30, 2020, we appointed the Honorable John Fogleman as special master to conduct a hearing and make findings of fact and to file his findings with this court's clerk.

We stated that upon receiving the special master's findings, "we will decide whether Teresa Lynette Bloodman should be held in contempt."

On May 5, 2020, Ligon filed his response to Bloodman's answer and motion to dismiss and reply to counterclaim. With regard to lack of jurisdiction and insufficiency of service and process, Ligon argued that these claims appear to replicate the claims in her motion to dismiss, which was denied by this court. Accordingly, Ligon argued that Bloodman should not get a second chance at dismissal on service and process. As to the contempt notice requirements, Ligon argued that the alleged contempt conduct charged here is engaging in the practice of law, in a state court or tribunal, during a period of law license suspension. That rule has no special "notice" requirement other than what might be required under traditional minimal attorney discipline due process requirements—notice of the charges and an opportunity to defend and be heard.[2]

On July 14 and 15, 2020, a hearing was held before Special Master Fogleman. On August 24, Special Master Fogleman filed his report and findings of fact with this court.

Prior to reaching the merits of the contempt action, we address Bloodman's argument that the contempt action should be dismissed because (1) the summons does not strictly comply with Rule 4(b)(3) of the Arkansas Rules of Civil Procedure; (2) Ligon did not serve Bloodman in strict compliance with Rule 4(f)(1)(A) of the Arkansas Rules of Civil

---

[2]On May 11, Bloodman filed a motion to strike Ligon's response and request for an immediate hearing. Bloodman also filed a request for admissions on June 12, Ligon responded on June 19. On July 9, Ligon filed his first motion in limine. On July 13, Ligon filed a motion to challenge an anticipated Fifth Amendment invocation by Bloodman. Also on July 13, Bloodman filed a motion to disqualify court reporter Patricia Hendrix. Based on our dismissal, we hold that these motions and any other outstanding motions are moot.

Procedure; and (3) Ligon did not execute it under oath and did not obtain an order to show cause. In response, Ligon argues that because this court previously denied Bloodman's motion to dismiss, her arguments are barred by the law-of-the-case doctrine. We disagree. The law-of-the-case doctrine prevents an issue already decided from being raised in a subsequent appeal and includes issues that could have been appealed and were not. *Furnas v. Kimbrell*, 2015 Ark. 148, at 12–13, 464 S.W.3d 116, 124 (citing *Kelly v. Kelly*, 2014 Ark. 543, 453 S.W.3d 655). The problem with Ligon's position is that Bloodman's motion to dismiss was not filed in a separate appeal—it was filed in the present appeal. In *Hartwick v. Hill*, 77 Ark. App. 185, 190, 73 S.W.3d 15, 19 (2002), *overruled on other grounds by Villines v. Harris*, 362 Ark. 393, 208 S.W.3d 763 (2005) (citing *Simmons v. State*, 341 Ark. 251, 15 S.W.3d 344 (2000); *Simmons v. State*, 72 Ark. App. 238, 34 S.W.3d 768 (2000)), the court of appeals explained that "[a]lthough it is unusual, it is neither unheard of nor prohibited for this court to deny a presubmission motion, but to grant the motion following submission of the appeal . . . . This is because a thorough examination of the complete record on appeal and, where appropriate, the transcript of the record, provides more information for our consideration than is ordinarily made available to the court by the presubmission motions and briefs of the parties." The same reasoning applies here. Contrary to Ligon's position, although we denied Bloodman's presubmission motion to dismiss the petition for contempt, more information is now available for our consideration through the special master's findings. Therefore, we now turn to Bloodman's arguments seeking a dismissal of the petition.

## I. *Rule 4(b)(3) and Rule 4(f)(1)(A)*

Bloodman argues that the contempt petition should be dismissed because the summons does not strictly comply with Rule 4(b)(3) of the Arkansas Rules of Civil Procedure. With regard to service of process, Bloodman argues that the contempt petition should be dismissed because she was not served in strict compliance with Rule 4(f)(1)(A) of the Arkansas Rules of Civil Procedure.

The law in Arkansas is well settled that service of valid process is necessary to give a court jurisdiction over a defendant. *Patsy Simmons Ltd. P'ship v. Finch*, 2010 Ark. 451, 370 S.W.3d 257. Historically, this court has made it patently clear that a summons must comply exactly and not substantially with the requirements of Rule 4(b). *Gatson v. Billings*, 2011 Ark. 125. We have explained the canons of construction for our court rules dealing with summonses as follows:

> Our case law is well-settled that statutory service requirements, being in derogation of common-law rights, must be strictly construed and compliance with them must be exact. This court has held that the same reasoning applies to service requirements imposed by court rules. More particularly, the technical requirements of a summons set out in Ark. R. Civ. P. 4(b) must be construed strictly and compliance with those requirements must be exact. Actual knowledge of a proceeding does not validate defective process. The reason for this rule is that service of valid process is necessary to give a court jurisdiction over a defendant.

> We have made it clear in a long line of cases that compliance with Rule 4(b) must be exact. The bright line standard of strict compliance permits certainty in the law; whereas, a substantial compliance standard would lead to an ad hoc analysis in each case in order to determine whether the due process requirements of the Arkansas and U.S. Constitutions have been met.

*Trusclair v. McGowan Working Partners*, 2009 Ark. 203, at 3–4, 306 S.W.3d 428, 430 (citations omitted).

However, on January 1, 2019, we adopted Rule 4(k) of the Arkansas Rules of Civil Procedure, which relaxed the traditional strict-compliance standard by reestablishing the substantial-compliance standard. Rule 4(k) provides that "[a]ny error as to the sufficiency of the process or the sufficiency of service of process shall be disregarded if the court determines that the serving party substantially complied with the provisions of this rule and that the defendant received actual notice of the complaint and filed a timely answer." In *In Re Recommendations of the Committee on Civil Practice*, 2018 Ark. 239 (per curiam), we recognized that revisions had been made to Rule 4, "most notably . . . in revising the substantial compliance provision in paragraph (k)." Further, we noted the following:

> **Subdivision (k).** This new provision reestablishes a substantial-compliance standard for process and service of process under Rule 4 when the defendant has actual notice of the complaint and has filed a timely answer. Other states have adopted similar rules. *E.g.*, Ore. R. Civ. P. 7(G).

> Subdivision (k) is in accord with older Arkansas authority holding the plaintiff to a substantial-compliance standard, both as to the summons and service of process, in nondefault cases. *E.g.*, *Ford Life Ins. Co. v. Parker*, 277 Ark. 516, 644 S.W.2d 239 (1982). More recent cases, however, have held that a defendant's actual notice of a lawsuit does not validate defective process or defective service. *E.g.*, *Trusclair v. McGowan Working Partners*, 2009 Ark. 203, 203 S.W.3d 428; *Carruth v. Design Interiors, Inc.*, 324 Ark. 373, 921 S.W.2d 944 (1996).

> The strict-compliance standard reflected in these decisions grows out of default situations. *E.g.*, *Wilburn v. Keenan Cos.*, 298 Ark. 461, 768 S.W.2d 531 (1989); *Edmonson v. Farris*, 263 Ark. 505, 565 S.W.2d 617 (1978). Despite the amendment of Ark. R. Civ. P. 55 to echo its federal counterpart, getting a default judgment set aside in Arkansas remains notoriously difficult. *E.g.*, *McGraw v. Jones*, 367 Ark. 138, 238 S.W.3d 15 (2006). Insistence on strict compliance is a helpful shield in the default situation. But the same standard should not be a sword when the defect in process or service of process was minor and the defendant had actual notice of the complaint and filed a timely response.

It is often stated that service requirements, being in derogation of common-law rights, must be strictly construed and complied with exactly. *E.g.*, *Trusclair*, 2009 Ark. 203, at 3, 203 S.W.3d at 430. This rule arose in the context of service on out-of-state defendants where "personal jurisdiction over a defendant may be founded on something less than actual notice." *Halliman v. Stiles*, 250 Ark. 249, 254, 464 S.W.2d 573, 577 (1971); *see generally Kerr v. Greenstein*, 213 Ark. 447, 212 S.W.2d 1 (1948) (construing nonresident motorist statute). When a defendant has actual notice of the complaint and does not default, however, due-process concerns are not present and the strict-compliance rule should not apply.

Application of the rule in nondefault situations is also at odds with the guiding [principle] of Rule 4—ensuring due process by giving the defendant adequate notice of the suit and an opportunity to respond before a judgment is entered. Subdivision (k) retains the strict-compliance rule in default situations, while reviving the substantial-compliance standard when the defendant has actual notice of a complaint and files a timely response. In the latter instance, due process is satisfied even if marginal defects in the summons or the service exist.

Ark. R. Civ. P. 4(k) reporter's notes (2019).

Here, relying on *Wine v. Chandler*, Bloodman argues that the substantial-compliance standard is not triggered in this case because she did not file a timely answer to the petition; rather, she filed a motion to dismiss. 2020 Ark. App. 412, at 10–11, 607 S.W.3d 522, 528–29 (explaining that although the appellees did receive notice of the complaint, they did not file an answer; rather, they filed a timely motion to dismiss pursuant to Rule 12 of the Arkansas Rules of Civil Procedure. Therefore, pursuant to Rule 4, the appellant could not avail himself of the relaxed substantial-compliance standard contemplated by Rule 4(k) and instead had to strictly comply with Rule 4). However, Bloodman's argument is misplaced. Pursuant to Rule 12(a)(2), once this court denied her April 16 motion to dismiss, Bloodman's responsive pleading was to be filed within ten days. Thus, Bloodman's responsive pleading filed on Monday, April 27 was timely. Because Bloodman received

9

actual notice of the petition and filed a timely answer, we hold that the substantial-compliance standard for process and service of process under Rule 4 applies.

## A. Summons

Having determined that the more relaxed standard of substantial compliance applies, we now turn to Bloodman's arguments on appeal. Bloodman contends that both the summons and service of process were defective.

With regard to summons, Bloodman raises two deficiencies: First, Bloodman argues that the February 6, 2020 summons does not contain Ligon's address as required by Rule 4(b)(3) of the Arkansas Rules of Civil Procedure. Second, the petition states in two places that what is attached to the summons is a "Petition for Disbarment" but no such petition was attached, rather a "Petition for Contempt" was attached.

Rule 4(b)(3) sets forth the form of summons and states that the summons shall be styled in the name of the court and issued under its seal, dated and signed by the clerk or a deputy clerk, and directed from the State of Arkansas to the defendant to be served. It shall contain the name and address of the plaintiff's attorney, if any, otherwise the address of the plaintiff.

Here, upon review of the summons, we hold that it is clearly defective. The summons not only stated incorrectly that a petition for disbarment was attached, contrary to Rule 4(b)(3), but also failed to state the address of the attorney's plaintiff.

## B. Service of Process

Next, with regard to service of process, Bloodman argues that the process server did not comply with Rule 4(f)(1)(A) because (1) he did not deliver the summons to Bloodman

10

personally; (2) he did not try to identify himself to Bloodman in order to make his purpose clear, because he did not, Bloodman did not refuse to receive any papers from him; and (3) the process server did not deliver a copy of the summons to Bloodman personally, and because he did not identify himself to her or make his purpose clear to her, he could not avail himself of Rule 4(f)(1)(A)'s option to leave the papers in close proximity to her.

Rule 4(f) governs personal service inside the state and provides that service of process shall be made as follows:

> (1) Natural Persons. If the defendant is a natural person at least 18 years of age or emancipated by court order, by:
>
>> (A) delivering a copy of the process to the defendant personally, or if he or she refuses to receive it after the process server makes his or her purpose clear, by leaving the papers in close proximity to the defendant[.]

Concerning service of process, the special master made the following findings:

> The process server testified that he handed [Bloodman] the summons along with the attached petition and other papers. The purported service was on or about February 25, 2020. The process server testified he could pick the person he served out of a lineup. Although [Bloodman] was questioning the process server, he testified that he had not seen the person he served while at the hearing.
>
> The witness testifying on Bloodman's behalf (about service) testified that on February 25, 2020, she was in a deposition in a federal matter and was represented by [Bloodman]. During the deposition, an older man came in the room and threw some papers on the table and turned and walked out without saying anything.
>
> It is found that on February 25, 2020, at a deposition in downtown Little Rock, the process server came into the room where the deposition was being taken and placed the summons, petition for contempt and other papers on the table in the vicinity of [Bloodman].

Here, based on the record and Rule 4(f)(1)(A), the process server neither testified nor did the special master find that Bloodman refused to receive a copy of the process after

11

the process server made his purpose clear. Accordingly, we agree with Bloodman's position that the process server did not trigger Rule 4(f)(1)(A)'s option to leave the papers in close proximity to Bloodman. To that end, Ligon did not comply with the service-of-process rules.

In sum, under the facts of this case, strict compliance with Rule 4 was not required, but Ligon was still required to substantially comply with Rule 4. Based on the defects found in the summons and the insufficient service of process, we cannot say that Ligon complied with the more relaxed substantial-compliance standard. Thus, the summons falls short of substantially complying with Rules 4(b)(3) and 4(f)(1)(A), and we therefore dismiss the petition for contempt. Because we dismiss on this basis, we need not consider the remaining arguments on appeal.

Dismissed.

Special Justices JEFFREY HATFIELD and REBECCA BLASS join.

WOOD and WYNNE, JJ., not participating.

*Teresa Lynette Bloodman*, pro se respondent.