Cite as 2023 Ark. App. 114

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-22-18

| | |
|---|---|
| MARK COGBURN AND KATELYN COGBURN<br><br>APPELLANTS<br><br>V.<br><br>WILLIAM T. MARSH, JR.<br><br>APPELLEE | Opinion Delivered March 1, 2023<br><br>APPEAL FROM THE MONTGOMERY COUNTY CIRCUIT COURT<br>[NO. 49CV-19-51]<br><br>HONORABLE ANDY RINER, JUDGE<br><br>REVERSED AND DISMISSED |

**RITA W. GRUBER, Judge**

Mark Cogburn and Katelyn Cogburn appeal the July 19, 2021 orders denying their motion to dismiss and granting the motion for default judgment filed by appellee William T. Marsh, Jr. The Cogburns raise three points on appeal: (1) they never waived lack of jurisdiction; (2) in the absence of service of process, the orders appealed from are void; and (3) they did not waive their objections by appearing at the hearings. The first and third points on appeal are essentially the same, and the second rises and falls with the resolution of the first and third. Thus, the issue before us is whether the circuit court erred in determining that the Cogburns waived the affirmative defense of insufficiency of service of process such that the circuit court acquired personal jurisdiction over them. The Cogburns' points are well taken, and we reverse and dismiss.

This case originated as a property dispute between the Cogburns and Marsh. The Cogburns purchased real property adjacent to Marsh in May 2019. On October 23, 2019, Marsh

filed a complaint against both Cogburns seeking an injunction, declaratory relief, a temporary restraining order (TRO), and to quiet title, claiming that he had acquired a portion of the Cogburns' real property through adverse possession or, alternatively, boundary line by acquiescence. On November 1, Ms. Cogburn was hand delivered "papers" at home by a process server; Mr. Cogburn was not at home. Thereafter, two returns of service were filed. As such, Marsh and the circuit court believed the Cogburns had been properly served. However, it was ultimately determined that the "papers" delivered to Ms. Cogburn were a copy of the complaint, the TRO, and a hearing notice for November 5. No summonses were ever served on either Cogburn.

Three hearings were held in this matter. On November 5, 2019, a hearing was held on the petition to continue the TRO (November hearing). Both Cogburns were present without legal representation. Mr. Cogburn took the stand; Ms. Cogburn did not. On February 25, 2020, a hearing was held on the motion for default judgment that had been filed by Marsh on December 23, 2019, at which Mr. Cogburn was present without legal representation (February hearing). A May 21, 2021 hearing was held on the Cogburns' motion to dismiss, filed on March 5, 2020. Counsel for the Cogburns appeared, having entered an appearance on February 5. Marsh was represented by an attorney for the entirety of the proceedings before the circuit court.

On July 19, 2021, the circuit court entered two orders, one denying the Cogburns' motion to dismiss and one granting Marsh's motion for default judgment. In the order denying the motion to dismiss, the court concluded that it had acquired jurisdiction over the Cogburns at the November hearing because the Cogburns waived the issue of personal service by appearing and participating at the November hearing, asking the court to make a finding in their favor,

2

and failing to raise an objection to personal jurisdiction. The court granted Marsh's motion for default judgment because the Cogburns did not file a responsive pleading within thirty days of service of the complaint. This timely appeal followed.

I. *Applicable Law and Standard of Review*

Service of valid process is necessary to give a court jurisdiction over a defendant. *Patsy Simmons Ltd. P'ship v. Finch*, 2010 Ark. 451, 370 S.W.3d 257. Our service rules place an extremely heavy burden on the plaintiff to demonstrate that compliance with our rules has been had. *Wine v. Chandler*, 2020 Ark. App. 412, at 10, 607 S.W.3d 522, 528. The guiding principle of Arkansas Rule of Civil Procedure 4 and the purpose of a summons is to ensure due process by giving the defendant adequate notice of the suit and an opportunity to respond before a judgment is entered. *Ligon v. Bloodman*, 2021 Ark. 124, at 8; *see also*, *Malloy v. Smith*, 2017 Ark. App. 288, at 9, 522 S.W.3d 819, 825. Actual knowledge of a proceeding does not validate defective process. *Trusclair v. McGowan Working Partners*, 2009 Ark. 203, at 3–4, 306 S.W.3d 428, 430.

Where no answer has been filed, a summons must comply exactly and not substantially with the requirements of Rule 4(b).[1] *Gatson v. Billings*, 2011 Ark. 125; Ark. R. Civ. P. 4(k) (2022). The strict-compliance standard grows out of default situations, as getting a default judgment set aside in Arkansas remains notoriously difficult. *Ligon*, 2021 Ark. 124, at 8. The bright-line standard of strict compliance permits certainty in the law. *Trusclair*, 2009 Ark. 203, at 3–4, 306 S.W.3d at 430.

---

[1]The substantial-compliance standard adopted by the supreme court in January 2019 is inapplicable here because Ark. R. Civ. P. 4(k) retained the strict-compliance rule in default situations. *Ligon*, 2021 Ark. 124, at 8.

The form of summons adopted by the supreme court provides in relevant part:

> A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it)--or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas--you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.
>
> . . . .
>
> If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Ark. R. Civ. P. 4.

Service defects may be waived. *T.S.B. v. Robinson*, 2019 Ark. App. 359, at 2, 586 S.W.3d 650, 653. The defense of personal jurisdiction may be also waived. *Affordable Bail Bonds, Inc. v. State*, 2015 Ark. App. 44, at 4. In a number of contexts, our courts have defined waiver as the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits, and it may occur when one, with full knowledge of the material facts, does something that is inconsistent with the known right or his intention to rely upon it. *Travelers Cas. & Sur. Co. of Am. v. Cummins Mid-South, LLC*, 2015 Ark. App. 229, at 6, 460 S.W.3d 308, 313-14. Whether a waiver occurred is a question of intent, which is usually a question of fact. *Id.* at 7, 460 S.W.3d at 314.

A party may waive a service challenge by actively participating in an action without objecting to the alleged insufficiency of service. *Dixon v. Dixon*, 2022 Ark. App. 439, at 9, 655 S.W.3d 520, 525. A determining factor in deciding whether a defendant has waived his rights and entered an appearance is whether the defendant seeks affirmative relief. *Affordable Bail Bonds, Inc., supra*. A request for affirmative relief that waives a challenge to sufficiency of process

4

is something more than a defensive action that is inconsistent with a defendant's assertion that the circuit court lacked personal jurisdiction over him. *Johnson v. Schumacher Grp. of Ark., Inc.*, 2019 Ark. App. 545, at 11–12, 589 S.W.3d 470, 477. The most obvious examples are counterclaims, cross-claims, and third-party claims in which a defendant invokes the jurisdiction of the court and thereby submits to it. *Id.* at 12, 589 S.W.3d at 477. We have also suggested that a motion for a stay of a final divorce hearing or a motion for additional time to locate a fugitive for a bond-forfeiture hearing demonstrate the sort of affirmative relief that may waive personal jurisdiction. *Id.* When service is not made in a manner provided for in Rule 4, the service and the judgment entered thereon are void ab initio. *Dobbs v. Discover Bank*, 2012 Ark. App. 678, at 12, 425 S.W.3d 50, 57.

We review a circuit court's factual conclusions regarding service of process under a clearly erroneous standard. *Wine*, 2020 Ark. App. 412, at 9, 607 S.W.3d at 528. In cases where the appellant claims that the circuit court erred in denying a motion to dismiss based on alleged errors in the process of service, our standard of review is whether the circuit court abused its discretion in denying the motion to dismiss. *Dobbs, supra*. In cases in which the appellant claims that the default judgment is void, our review is de novo, and we give no deference to the circuit court's ruling. *Lockard & Williams Ins. Servs., Inc. v. Waldrip*, 2020 Ark. App. 274, at 5, 600 S.W.3d 662, 665.

## II. *Discussion*

On appeal, the Cogburns argue that they did not waive their affirmative defenses, and the circuit court never acquired personal jurisdiction over them. Marsh responds that by attending the November and February hearings, failing to object to personal jurisdiction at either

5

hearing, and requesting affirmative relief at the hearings, the Cogburns waived service of process and submitted to the court's jurisdiction.

The circuit court concluded that it acquired personal jurisdiction over the Cogburns at the November hearing. The Cogburns contend that their attendance at the November hearing could not have waived their affirmative defenses because, even assuming proper service occurred on November 1, there was still ample time remaining for them to file a responsive pleading under our rules of civil procedure. We agree. The circuit court's conclusion does not comport with the pleading requirements set out by our rules of civil procedure. The Cogburns are entitled to thirty days—not four days—to respond to a lawsuit and assert affirmative defenses, either within a responsive pleading or a motion. Ark. R. Civ. P. 12. Marsh sought a TRO and injunctive relief, which required that the matter be set for a hearing at the earliest possible time under Arkansas Rule of Civil Procedure 65 but does not deprive the Cogburns of those rights or truncate the time permitted by our rules for asserting such. The circuit court also partially relied on conduct engaged in by the Cogburns at the February 2020 hearing to conclude that it had attained personal jurisdiction over the Cogburns at the November 2019 hearing. That was in error. The Cogburns cannot waive an affirmative defense on the basis of conduct they had yet to engage in.

Marsh essentially argues that because neither of the Cogburns said, "I object to personal jurisdiction," they have somehow failed to do so. There are no mandatory magic words, and the Cogburns are not required to explicitly contest personal jurisdiction. Service-related objections *may* be waived by participating in an action. *Dixon*, *supra*. Our caselaw does not hold that they

*are* waived. A determining factor in that regard is whether the Cogburns sought affirmative relief. *Affordable Bail Bonds, Inc.*, *supra*.

The primary underlying claim is adverse possession. Marsh argues that Mr. Cogburn waived both his and Ms. Cogburn's affirmative defenses because Mr. Cogburn asked the court for affirmative relief at the November hearing. The Cogburns did not request any of the "obvious examples" of affirmative relief identified by our courts—they made no counterclaim, cross-claim, or third-party claim; they neither made nor filed any motions, other than the motion to dismiss; and they did not agree or stipulate to any order. *Johnson*, *supra*. The stated and sole purpose of the November hearing, as confirmed by both Marsh's counsel and the court, was to maintain the status quo regarding a fence located on the Cogburn property at issue. Mr. Cogburn testified that he, his wife, and "Farm Credit" owned the real property at issue. At that juncture, there was no affirmative relief for the Cogburns to seek. While Mr. Cogburn did testify that the court should deny the relief requested by Marsh, the court was clear that it was not addressing the merits of Marsh's underlying claims. Moreover, in doing so, Mr. Cogburn was maintaining a defensive posture, not seeking affirmative relief.

When Marsh moved to introduce the filed returns of service into evidence, the court asked the Cogburns if there was any objection, and Mr. Cogburn responded with multiple questions. The court and Marsh's counsel then engaged in a colloquy regarding the returns of service, but there was no effort to ascertain what, exactly, the Cogburns had been served with. At one point, Mr. Cogburn stated that he was not an attorney; there were things he did not know because of that; and he was unfamiliar with the concept of adverse possession. The court and Marsh's counsel also both recognized that the Cogburns were handicapped by the lack of

7

representation and that they still had time to hire an attorney and do "whatever they needed to do." The court specifically said, "Mr. and Ms. Cogburn, you've got to leave the fence alone until we get in here and have a trial on the merits. And that certainly gives you an opportunity to, of course, to get an attorney and file the paperwork that you need to do."

The Cogburns had no reason to understand, know, or believe that in attending a hearing within four days of being delivered a complaint, they had somehow waived their due-process rights.[2] It cannot be said that Mr. Cogburn had full knowledge of the material facts and then voluntarily abandoned a right known by him to exist with the intent that he should forever be deprived of its benefits. *Travelers Cas. & Sur. Co. of Am., supra.* We fail to see how Mr. Cogburn was asking for affirmative relief when he did not even understand the nature of the claim that was being made against him and his wife.

Mr. and Ms. Cogburn's roles are conflated throughout the entirety of the proceedings before the circuit court and on appeal. While the record does not reflect how the Cogburn property is owned as between Mr. and Ms. Cogburn, they were both named as separate defendants and were both entitled to assert their respective affirmative defenses. At most, Ms. Cogburn attended the November hearing, but did not speak. Given this, as well as the fact that Mr. Cogburn is not an attorney and cannot represent the legal interests of anyone other than himself in a court of law, there is no evidence that Ms. Cogburn waived her affirmative defenses.

---

[2]The circuit court recognized the complexity of the issue and stated it could not find a case in which someone appeared to defend against a TRO and that doing so constituted a waiver of service. Neither party on appeal has provided any such authority to this court, nor are we aware of any.

In ruling as it did, the circuit court primarily relied on *Trelfa v. Simmons First Bank of Jonesboro*, 98 Ark. App. 287, 254 S.W.3d 775 (2007). The facts of *Trelfa*, however, are distinguishable from the instant case. There, the court concluded that the defendants waived any objection to the admittedly defective service of process because they appeared in the action without raising an objection to the process or its service prior to the entry of the final decree. *Id.* at 291, 254 S.W.3d at 778. This court held that the defendants "recognized the case as being in court and entered their appearance by agreeing to the entry of an order appointing a receiver." *Id.* at 292, 254 S.W.3d at 779. This court further noted that "[s]uch an agreed order is, in effect, a stipulation and recognizes the case as being in court because it is a step in the process of resolving the case and one of the remedies sought by [the plaintiff.]" *Id.* The only orders entered in this matter prior to the orders from which the Cogburns appeal were the TROs, one of which the Cogburns were made aware of after the fact, the continuation of which was not agreed or stipulated to by the Cogburns. Certainly, the filing of the motion to dismiss occurred prior to the entry of the final judgment.

The circuit court further cited a portion of the *Trelfa* opinion, which quotes language from *Federal Land Bank of St. Louis v. Gladish*, 176 Ark. 267, 2 S.W.2d 696, 697 (1928). In *Gladish*, the supreme court held that the appellant, by filing a counterclaim and asking for affirmative relief, had entered its appearance and waived any defense that there might be in the service or failure to get proper service. In doing so, the court specifically relied on the fact that the party contesting personal jurisdiction had not only filed an answer but had also filed a counterclaim or cross-complaint asking for affirmative relief as well as entering into an agreement that the suit

should be tried in a particular city, by a particular judge, on a particular date, and that all parties then proceeded to a bench trial on the merits. No such conduct was engaged in by the Cogburns.

As to the February 2020 hearing, the circuit court, solely based on its erroneous belief that the Cogburns had been properly served, orally ruled from the bench that it was going to grant the motion for default judgment. It was not until May 2021 that Marsh's counsel relayed to the court that he had conferred with the process server and confirmed that no summonses were ever served. The orders on appeal were not filed until July 19, 2021, after a hearing on the Cogburns' motion to dismiss. It was in the court's order denying the motion to dismiss that the court specifically concluded that it had acquired personal jurisdiction over the Cogburns at the November hearing due to the Cogburns' conduct rather than proper service upon them. While the order on appeal referenced conduct engaged in by Mr. Cogburn at the February hearing in support of that conclusion, the court did not make an alternative specific ruling that it also acquired personal jurisdiction at the February hearing. *See, e.g., Taffner v. Ark. Dep't of Hum. Servs.*, 2016 Ark. 231, at 11, 493 S.W.3d 319, 327 (holding that absent a specific ruling by the circuit court, there was nothing for this court to review).

Our rules exist to provide certainty to litigants. Marsh has argued that the circuit court acquired jurisdiction over the Cogburns on November 1, 2019, November 5, 2019, or February 25, 2020. Problematic with each one of those dates is that the record is void of any evidence that either Cogburn was ever given notice of any deadline, their respective obligations to file a

10

response by a deadline, or the consequences of failing to do so.[3] Short of that notice, which is contained in the form summons, the Cogburns' obligations were not triggered.

Simply stated, the Cogburns were not afforded their due process in this case. We hold that the Cogburns did not waive their affirmative defenses such that the circuit court acquired personal jurisdiction over them. Because the circuit court did not acquire personal jurisdiction over the Cogburns, the default judgment is void ab initio. *Dobbs*, *supra*. Finally, the record in this case is not sufficiently developed to allow us to determine whether Marsh's action is now time-barred. Therefore, although we reverse and dismiss, we do so without prejudice.

Reversed and dismissed.

ABRAMSON and BARRETT, JJ., agree.

*Robert S. Tschiemer*, for appellants.

*Legacy Law Group*, by: *Michael S. McCrary* and *Philip B. Montgomery*, for appellee.

---

[3]At the February hearing, Marsh argued that the court had advised the Cogburns at the November hearing that they "needed to file an answer to the complaint and—or engage an attorney." That is inaccurate. The court told the Cogburns that they would have time to retain an attorney and file any "necessary paperwork."