Cite as 2021 Ark. App. 171

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-20-381

| | |
|---|---|
| NOAH STEFFY<br><br>APPELLANT<br><br>V.<br><br>ALECIA STEFFY<br><br>APPELLEE | **Opinion Delivered** April 21, 2021<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FDR-20-116]<br><br>HONORABLE SHANNON L. BLATT, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

In this one-brief appeal, appellant argues that the evidence was insufficient to support a final order of protection entered on 4 March 2020. We affirm the circuit court's order.

I.

Alecia Steffy started this case in the Sebastian County Circuit Court on 20 February 2020 when she filed a petition and supporting affidavit for an order of protection against Noah Steffy under the Domestic Abuse Act. Ark. Code Ann. § 9-15-205(a) (Repl. 2015). Domestic abuse is defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members." Ark. Code Ann. § 9-15-103(4)(A) (Repl. 2020).

Alecia's affidavit alleged that on 13 January 2020, her husband, Noah, threatened to hit her in the head with a fire log. The affidavit further alleged that on February 4, while

Alecia was recovering from an abdominal hernia surgery, Noah had argued with her and said that he "believes that a husband has every right to apply corporal punishment to his wife as [sic] he (the husband) sees fit." She said that Noah spanked her bottom, picked up a hammer, and threatened "to bash [her] head in with it if [she] didn't 'shut up.'" Alecia wrote about several events over the past few years that left her with scratches, slaps, punches, and a bruise that did not go away for nearly four months. According to Alecia, there had been a violent incident in 2005, but things had "quieted down" for the most part between 2005 and 2013; but in 2014, after the birth of their third child, Noah's outbursts resumed. Alecia and Noah have five children. Alecia said that Noah stated that he would "take out anyone" who tried to take his kids away from him, and "the only way anyone would get his kids was over his dead body."

Alecia also alleged that if she got custody of the children, Noah "would take them and run. He is determined not to let me have our kids." "If I ever try to take the kids and go, he would not stop until he found me, and then when he did find me, I would regret ever taking them in the first place." Alecia asked for full custody of the children because Noah "can't tolerate keeping his kids for more than an hour without getting upset."

In light of these allegations, the circuit court entered an ex parte order of protection against Noah on 20 February 2020. A final hearing was held on 4 March 2020.

At the final hearing, seventeen-year-old TS testified that Noah threatened to have Alecia "hauled to jail," that he will "make sure" Alecia does not separate from him, and that he would pound Alecia's head into the ground. TS also testified that Noah had threatened

2

to bash her head in the ground; and that if she were a boy then he would have already "dealt with [her] as such." TS said that she did not feel safe at home.

On cross-examination, TS agreed that she had observed Noah's physical violence toward Alecia, including a spanking. She said that Noah's being "really, really upset" occurred frequently, and that if Alecia contacted the police about anything Noah said, he would hurt Alecia.

AS testified that she and her siblings were outside last month, Noah would not let her in, and she heard him yelling at Alecia while she was doing laundry. AS saw Noah pick up a board and threaten to put it through Alecia's throat. AS also said that Noah had picked up a hammer when he was really angry. According to AS, Noah frequently called Alecia names and told her she was a failure as a mother. AS said that Noah had hit her with a small metal rod when he was angry, had broken her taekwondo board, and had threatened to hit her with it. AS also said that Noah had threatened to hit her sister, TS, with a metal hanger when she would not let him read a love letter she had written to someone. AS testified that Noah told TS that he would have smashed her face in if she was a boy or killed her by now.

There is more. Suffice it to say that Alecia testified during the final hearing that she was seeking an order of protection because it was no longer safe to stay in her home with Noah. She gave the court details about the events alleged in her petition—specifically, the February 4 event after her hernia surgery and the February 17 event in which Noah threatened to shove the board into her neck while she was doing laundry. The rest is in the record.

Noah did not testify, but Pamela Reed, Noah's mother, testified on his behalf. She said that she lives three doors down from the family and that she had never heard any screaming or fighting. She said that she had heard Noah threaten Alecia with physical harm but not the children. Angie Ellis, a friend, testified that Noah did yard work for her and that the girls and Alecia would sometimes do the yard work. She said that while the kids were "pretty rambunctious" they did not seem afraid of him and that she did not see any signs of abuse that needed to be reported.

At the conclusion of the final hearing, the circuit court found that Alecia had proved her case by a preponderance of the evidence and that the allegations in her petition were true. On 4 March 2020, the circuit court entered a final order of protection against Noah, effective for one year.[1] The court wrote that "the victim(s) is (are) in immediate and present danger of domestic abuse and therefore an Order of Protection is hereby granted[.]" Under the order's terms, Noah was prohibited from contacting Alecia, and he was excluded from her residence, place of employment, and church.

II.

Noah argues that the circuit court erred by entering a final order of protection without finding domestic abuse and that there was insufficient evidence to support the order. Our standard of review following a bench trial under the Domestic Abuse Act is whether the circuit court's findings are clearly erroneous. *Poland v. Poland*, 2017 Ark. App. 178, at 2, 518 S.W.3d 98, 100. A finding is clearly erroneous when, although there is evidence to

---

[1]Although the order of protection expired on 4 March 2021, this appeal is not mooted by the order's expiration. *See Poland v. Poland*, 2017 Ark. App. 178, 518 S.W.3d 98.

support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id*. Disputed facts and determinations of credibility are within the province of the fact-finder. *Id*. Under Arkansas Code Annotated section 9-15-103(4)(A), there must be evidence that Noah caused physical harm, bodily injury, or assault, or the infliction of fear of imminent physical harm to support the court's entry of a final order of protection. *Id*.

The circuit court found that Alecia was in immediate and present danger of domestic abuse. That decision was not clearly erroneous on this record. Consequently, the court's decision to enter a protective order that restricts Noah's contact with Alecia for one year is affirmed.

Affirmed.

ABRAMSON and GRUBER, JJ., agree.

*Lisa-Marie Norris*, for appellant.

One brief only.