Cite as 2022 Ark. App. 439

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-21-323

KEITH DIXON

APPELLANT

V.

HOLLY DIXON AND TYLER VAN DYKE

APPELLEES

Opinion Delivered November 2, 2022

APPEAL FROM THE FAULKNER
COUNTY CIRCUIT COURT
[NOS. 23DR-20-938 & 23DR-20-939]

HONORABLE H.G. FOSTER, JUDGE

AFFIRMED

## RITA W. GRUBER, Judge

Keith Dixon filed this appeal from the Faulkner County Circuit Court's entry of two final orders of protection in favor of his estranged wife and daughter. He brings four points on appeal contending that the circuit court erred (1) by failing to rule on his motion to dismiss for insufficiency of service of process and to dismiss the actions; (2) in granting a final order of protection in favor of his daughter, Tyler Van Dyke; (3) in granting an order of protection in favor of Tyler for a ten-year period; and (4) in granting an order of protection in favor of his wife, Holly Dixon, for a ten-year period. We affirm the circuit court's orders.

Keith and Holly married on October 24, 2009, when Tyler was seven years old. Keith adopted Tyler in a stepparent adoption after the parties were married. On September 3, 2020, Holly left Keith, and she and Tyler moved into an apartment in Conway. Keith filed

for a divorce in the Perry County Circuit Court on September 4, using Herby Branscum as his attorney.

After an incident in early October in which Keith came to their apartment, detailed more herein, both Holly and Tyler filed petitions for ex parte orders of protection. The petitions were filed on October 20, 2020, in the Faulkner County Circuit Court, and the court entered temporary orders, which were later extended through December 10. An affidavit of service was filed on November 9, showing proof of service on Herby Branscum, as agent authorized by appointment or law to receive service on Keith's behalf. On December 2, Keith filed a motion to dismiss in both cases, alleging that neither he nor anyone authorized on his behalf was served with the petition. He contended that he had not authorized his divorce attorney to receive service on his behalf in this case. No hearing was ever set for the motions to dismiss.

A hearing for the permanent orders of protection was held jointly on December 17. Tyler testified that she had witnessed physical and emotional abuse in their home during the approximately ten-year period she lived with her mother and stepfather. She said that she saw Keith strike, choke, punch, and kick her mother; that Keith was often angry; and that there was "a lot of screaming, throwing things, and of course hurting my mom." She said the fear of it happening to her or to her mom again made her feel unsafe. She also said she felt "unsafe and uncomfortable" due to "sexual tensions" that had arisen, and she thought Keith was behaving inappropriately. She gave as an example—Keith coming into her room unannounced at random times. She said "[T]he control had gotten extreme, and it seemed,

2

there were just certain instances that made me feel uncomfortable and like my friends also felt very uncomfortable." She said he made inappropriate comments to her based on her appearance that made her uncomfortable. She testified that he would call her friends "sexy" and engaged in "inappropriate touching," leading her to tell him that he shouldn't touch them. She said he also walked into her bathroom when she was in the shower. Tyler moved out in May 2020 when she turned eighteen, initially moving in with her grandmother and then with friends.

Tyler testified that her mother left Keith in September and that they rented an apartment together in Conway. Neither she nor her mother told Keith where the apartment was located, but she said he eventually found it and began coming there. She described the incident that prompted her and Holly to file their petitions. She said that she and Holly were driving home from shopping at Target, and she noticed someone behind them when she was pulling into the apartments. It was Keith, and he pulled up, parked behind them, and blocked them in their parking space. She said he came to the side of the car, "knocking on the windows violently," and demanded they give him their keys and credit cards. She testified that they were scared, and they locked the car doors until he backed away and they were able to get into the apartment and call the police. She said that she had seen him drive around the area since that time and had seen him sitting in his car at the Walgreens close to the apartments when she was coming home from school. She said it makes her anxious because he has no reason to be in Conway at Walgreens by the apartment. She was afraid that he

would continue to "stalk," "harass," and threaten her if a permanent order of protection were not entered.

Holly testified that Keith began physically abusing her in 2011, several years after they had married. She said it happened multiple times and recounted one incident in which he told her she needed to tell him she was sorry, and she asked "for what" because she did not know what they were fighting about. She said he left the room and then returned "out of nowhere and just grabbed me and threw me to the ground." She said she did not remember a lot after that because she hit her head and he started kicking her. She said at some point, Tyler came in screaming and telling Keith to stop. She said the abuse continued, but she did not call the police because she was afraid, and she did not speak to Keith of the pain because he would hit her again. She learned not to disagree with him. She said he also has an anger and "rage" problem. She said she did not know why, and she would "just bow down and just [do] whatever it would take to . . . stop the anger." She said the night she moved out, he already knew where she was moving and the apartment they were moving into, although she had not told him any of that information. She said she moved out because she did not feel safe anymore and because she did not want to be without Tyler, who had moved out.

She said on the night he blocked in Tyler's car at the apartment, he "came out of nowhere," pulled in behind them, and "bright-lighted" them. She said he came up to the car yelling, screaming, and threatening them while they sat there "petrified of what he could do." She said she had no idea he would come from the marital home in Perry County to

Conway to threaten her. She said they had been in counseling about separating, and she was trying to "do it in a civil way." She said when a narcissistic person loses control, the person is grasping at straws. She said that she was petrified because she knew he had a concealed weapon, knew what he was capable of doing, and knew he had lost control after she filed the petition. She said he has always gotten away with whatever he wants to do; that she had always gone along with him; and when she stopped going along, things started to happen. She said that she was fearful for her safety and would look both ways and in the bushes whenever she left the apartment. She said he's "going to get his way," and he's going to "do whatever it takes to get his way." She testified that he had always told her that "a random crime is the best crime."

Keith testified that he is a retired nephrologist and general internist. He said he had kicked Holly out of the house before when he tried to call her an hour and a half after she went to play tennis, and she said she was at Kroger on the way home. He continued to try to call and talk with her, but she did not answer the phone and showed up at the house four hours later in different clothes. She explained that she had been Christmas shopping, but she had no gifts, so he kicked her out. He said he was drunk and that he gets severely depressed and turns to alcohol in such instances. He said Holly called the police to get her stuff, and the police asked if he had threatened her. In response to counsel's question whether any of her allegations of physical abuse were true, the following colloquy took place:

KEITH:        I was married for 30 years and never touched my wife, okay?

COUNSEL:    Well, we're talking about –

KEITH: And I know. I know. I'm getting to it. I – I have – Holly– the way – the way it's happened, and it's been years and years since I've touched Holly –

COUNSEL: Okay. When you say "touched her" –

KEITH: Well, yes, no, I've – I – let me just say. I've pushed her down, and I have kicked her, and I have – and I've slapped and knocked her glasses off.

COUNSEL: How long ago?

KEITH: That's been eight years, nine years ago.

COUNSEL: Okay.

KEITH: I haven't touched Holly in years.

COUNSEL: Okay. So eight or nine years ago you do admit that –

KEITH: Yes.
. . .
KEITH: If you look at the stuff that she's got down there – just – I'll just give you an example. I was intoxicated –

COURT: Doctor. Doctor, the question was, is any of it true?

KEITH: Oh.

COURT: We need to listen to the question –

KEITH: It –

COURT: You need to listen to the question –

KEITH: Oh, okay. Yes, sir.

COURT: I'm sorry –

KEITH: Yes –

COURT:      I'm sorry.

KEITH:      Okay. Go ahead.

COURT:      Only one of us needs to talk, and –

KEITH:      Go ahead. I'm sorry.

COURT:      – one of the two of us is me.

KEITH:      Go ahead.

COURT:      It needs to be me.

KEITH:      You're in charge.

COURT:      Thank you. I appreciate that. I appreciate your conceding that for me, Doctor. What you need to do is listen to the question that's asked and answer the question that's asked.

When asked whether he has violent anger and rage, he said that Holly is his "trigger" and that he would beg her to stop and leave him alone, but she would not during an argument. He admitted that Holly's actions did not "justify it." He said he asked her if she loved him, and she said she had not loved him in eight years, so he filed for divorce the next day. He testified that he had never done anything sexually inappropriate to Tyler or her friends and that he went to that Walgreens because it is his pharmacy.

Finally, he said he was not violent the night he blocked them in and had only gone to retrieve his gate openers and credit cards. He admitted it was "probably a mistake to show up like that." He also testified that Holly and Tyler were "scared," so he backed off.

At the conclusion of the hearing, the court indicated that it did not seem odd that Keith testified Holly told him she had not loved him in eight years, which was about the

same time the physical abuse testified to took place. The court also said that it had the opportunity to observe the witnesses and make determinations about their credibility based on its observation and being physically present with them. The court stated that the record reflected that counsel and the court had trouble keeping Keith on track. The court said it understood how it felt to "be in a position where you're normally in charge" and then to find yourself in a situation "that the judge is actually in charge of the courtroom." The court noted that this behavior was "consistent with the allegations and the conclusions that I draw based on the evidence." The court then stated that it had a lot of experience dealing with domestic violence and that it did not think Tyler and Holly were lying. When the court asked Holly and Tyler's counsel how long they wanted the order of protection to last, she answered, "[A]s long as the Court can give it to us." The court then granted a ten-year order of protection in both cases.

I. *Motion to Dismiss*

For his first point on appeal, Keith contends that the circuit court erred by failing to rule on his motion to dismiss for insufficiency of service of process. Unfortunately, we simply have nothing to review regarding the motion to dismiss because, as Keith admits in his point on appeal, the circuit court did not rule on the motion. Keith has provided no authority for his argument that this court reviews a court's "failure to rule" for error. We have said, however, that we will not review a motion to dismiss where appellant failed to obtain a ruling on the motion. *Fratesi v. Fogleman*, 72 Ark. App. 1, 32 S.W.3d 38 (2000). There is nothing in the record to suggest Keith even requested a hearing on the motion. Moreover, without

ever obtaining a ruling on the motion, Keith attended and participated in the hearing on the merits without mentioning the alleged insufficiency of service. Our law is well settled that any defects in the process, the return thereon, or the service thereof are cured or waived by the appearance of the defendant without raising an objection, and the defendant is precluded from thereafter taking advantage of the defect. *Trelfa v. Simmons First Bank of Jonesboro*, 98 Ark. App. 287, 292, 254 S.W.3d 775, 779 (2007); *see also Edwards v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 37, at 13, 480 S.W.3d 215, 223. By actively participating in the action without objecting to the alleged insufficiency of service, Keith waived his challenge related to the service of the petition. *See T.S.B. v. Robinson*, 2019 Ark. App. 359, at 4, 586 S.W.3d 650, 653.

## II. *Final Order of Protection in Favor of Tyler*

For his second point, Keith contends that the circuit court erred in granting a final order of protection in favor of Tyler because Tyler never alleged or testified that Keith had threatened to harm her or that he had physically abused her in any manner. He contends that her testimony simply stated that she was concerned for her mother's safety, and although she testified that she was scared when he approached her car at the apartment in Conway, she did not offer proof that she was in fear of imminent physical harm, bodily injury, or assault. Basically, he contends that Tyler's "fear" is because of her mother and is for her mother's safety and not for herself or because of what Keith has threatened to do to Tyler.

An order of protection may be entered upon a finding of domestic abuse. Ark. Code Ann. § 9-15-205(a) (Repl. 2020). Domestic abuse is defined as "physical harm, bodily injury,

assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members." Ark. Code Ann. § 9-15-103(4)(A) (Repl. 2020). Our standard of review following a bench trial under the Domestic Abuse Act is whether the circuit court's findings are clearly erroneous. *Steffy v. Steffy*, 2021 Ark. App. 171, at 4. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Disputed facts and determinations of credibility are within the province of the fact-finder. *Id.*

We turn to the evidence presented at the hearing. Tyler testified that she had witnessed physical and emotional abuse in their home during the approximately ten-year period she lived with her mother and stepfather. She said that she saw Keith strike, choke, punch, and kick her mother; that Keith was often angry; and that there was "a lot of screaming, throwing things, and of course hurting my mom." She said the fear of it happening *to her* or to her mom again made her feel unsafe. She specifically testified that she was scared when Keith approached her and her mother at the apartment in Conway; Holly testified they were "petrified"; and Keith admitted in his testimony that Holly and Tyler appeared to be scared of him, causing him to back away. First, we don't see this record as Keith represents it. Tyler was not merely in fear for her mother's safety but for own as well. Second, Keith argues that because he had not specifically threatened to harm Tyler and had not physically abused her, her fear was somehow not justified or "proven." The circuit court was not required to view Keith's behavior toward Tyler in isolation from his behavior toward

Holly. His violent behavior occurred in Tyler's family over a period of many years—in fact, for Tyler, this amounted to over half her life. It is not clearly erroneous for the circuit court to conclude that Keith's physically and emotionally abusive behavior could reasonably inflict fear of imminent physical harm, bodily injury, or assault in Tyler. *See, e.g.*, *Baltz v. Baltz*, 2021 Ark. App. 202, 624 S.W.3d 338. Accordingly, we affirm the court's finding of domestic abuse.

### III. *Ten-Year Order of Protection for Tyler*

Next, Keith argues that the circuit court erred in entering an order of protection in favor of Tyler for a ten-year period. He claims that, even if there were sufficient evidence to support a final order of protection on behalf of Tyler, ten years is excessive under the circumstances of this case. He again states that there was no evidence that he committed or threatened to commit any physical harm, bodily injury, or assault upon Tyler before the September 3 incident at the apartment. He argues that the circuit court stated no reason for issuing the order for such a significant length of time and treating Tyler's case identically to Holly's case other than counsel's request that it be granted for "as long as the Court can give it to us."

Arkansas Code Annotated section 9-15-205(b) authorizes a court to enter an order of protection for a duration between ninety days and ten years "in the discretion of the court." The court may then renew it "at a subsequent hearing upon proof and a finding by the court that the threat of domestic abuse still exists." Ark. Code Ann. § 9-15-205(b). The abuse-of-discretion standard of review is a high threshold that does not simply require us to determine

that the circuit court erred but requires us to hold that that the circuit court act improvidently, thoughtlessly, or without due consideration. *Steele v. Lyon*, 2015 Ark. App. 251, at 4, 460 S.W.3d 827, 831.

According to the testimony of both Holly and Tyler, Keith was filled with rage, angry, and physically abusive to Holly in front of Tyler for years—the majority of her childhood. When she turned eighteen, she left her family home and her mother to escape Keith. Tyler testified that after she had moved into the apartment in Conway, Keith began appearing at the Walgreens near her home when she came home from school. Holly testified that when a narcissistic person loses control, that person is grasping at straws. She said that she was petrified because she knew Keith had a concealed weapon, knew what he was capable of doing, and knew he had lost control after she filed the petition. Tyler said the fear of Keith harming her or her mom again made her feel unsafe. We simply cannot say the circuit court abused its discretion in granting the order of protection for ten years, which is allowed by the statute.

IV. *Ten-Year Order of Protection for Holly*

Finally, Keith argues that the circuit court's entry of a ten-year final order of protection in favor of Holly was excessive where other adequate remedies were available. He basically restates the evidence presented, pointing out perceived inconsistencies in Holly's testimony that he claims demonstrate she is not truly afraid of Keith. He also admits that the parties were emotional at the hearing and that he "did himself no favors during the hearing" by describing Holly as a "trigger" for his behavior and acting in such a manner that the court

12

felt obligated to admonish him. He contends that Holly's courtroom demeaner and testimony that she was petrified of Keith is belied by her actions in going to the marital residence to attempt to retrieve her belongings.

The testimony established that Keith hit, punched, choked, and kicked Holly; that he had a pattern of rage and violence throughout the marriage; that he had a concealed weapon and had made statements to her suggesting he meant her harm if she defied him; and that he continued to inflict in Holly the fear of physical harm, bodily injury, or assault after she moved to Conway. The court stated on the record that it found her credible. Keith asks us to reweigh the evidence insofar as Holly's stories and behavior appear inconsistent; however, it is within the sole province of the fact-finder to weigh credibility and resolve disputed facts. *Lewis v. Lewis*, 2018 Ark. App. 148, at 3. On this record, we cannot say that the circuit court abused its discretion in entering a ten-year order of protection for Holly.

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

*Branscum Law Offices*, by: *Herby Branscum, Jr.*; and *Elizabeth Branscum Burgess*, for appellant.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by: *Traci LaCerra*, for appellees.