Cite as 2023 Ark. App. 504

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-22-618

| | | |
|---|---|---|
| DANNY HOPPER | | Opinion Delivered November 1, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17DR-22-198] |
| V. | | |
| PAMELA HOPPER | | HONORABLE CANDICE A. SETTLE, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Danny Hopper brings this one-brief appeal challenging the final order by the Crawford County Circuit Court extending an order of protection against him until May 2032. He contends that the circuit court erred by (1) granting an order of protection on the basis of controlling behavior and that due process of the State of Arkansas demands that a person violates the domestic-violence statute in order to obtain an order of protection, (2) restricting questions and testimony to domestic violence and prohibiting appellant from disputing statements made by appellee that would determine the credibility of the witness, (3) not reviewing evidence that proved the witness was not credible, and (4) not allowing appellant to admit evidence proving the witness was not credible. We affirm.

Appellee sought an ex parte order of protection on May 2, 2022. In her petition, she stated that throughout the parties' first five years of marriage, appellant had thrown objects

at her head, had choked her on two occasions, had pulled her around by her hair and face, and had slammed her hand in the door. She indicated that she was afraid of appellant because he was very unstable and was making threats and showing up at her residence and her friend's residence. She alleged appellant had showed up at the friend's residence "in disguise" to inquire about appellee. She also stated that appellant called the lady she lives with and provides care for to persuade the lady to fire appellee. Appellee stated that she is in immediate and present danger of domestic abuse because appellant is desperate to stop their divorce and is becoming angrier in the many daily emails he sends appellee. She alleged that appellant told her that she is "going to end up like the dead kitten in [their bathtub]." According to appellee, appellant has sent her over one thousand emails since kicking her out of the marital home. In the accompanying affidavit, appellee stated that appellant is "insisting [that she] stop the divorce and come home before it's too late, and that [appellee] will end up like the dead kitten that was floating in [the parties'] bathtub." She alleged that appellant's behavior is bizarre and that he is "[v]ery unstable and capable of doing harm." Appellee indicated that appellant came to her residence twice on April 28 and then went to her friend's residence in disguise.

The Crawford County Circuit Court entered an ex parte order of protection on May 2, effective until May 25, the date a hearing was set. Appellant filed an answer to appellee's petition on May 23 consisting of four typed, single-spaced pages. The hearing took place as scheduled. Appellee testified that she and appellant were now divorced as of the prior week. She stated that appellant had continuously harassed her since kicking her out of the house

2

on October 14, 2021, including his attempt to have her fired and kicked out of her current residence. She testified that appellant has been physically abusive to her in the past, including choking her on two separate occasions. She said that appellant is volatile and unstable and that she wants the protection order so that she does not have to deal with him again. Appellee testified that appellant is no stranger to protection orders because both his ex-wife and an attorney had to take protection orders out against appellant for stalking. She said that appellant served four years in prison, partly due to the stalking. Appellee introduced messages from appellant that she described as "a veiled threat or something derogatory or something to that effect." She said that appellant has sent her a couple of dozen emails since the temporary order of protection was entered, with the last one being sent on May 22.

On cross-examination by appellant, appellee testified that she is a live-in caregiver for an eighty-three-year-old woman and that appellant came to that residence twice on April 28. She stated that on the same day, appellant wore a disguise and went to a mutual friend's home. Appellee stated that when appellant first assaulted her, he took "a handful of change and threw it at the side of [her] head." She said that appellant shut her hand in the bedroom door when she was trying to keep him from shutting her in the room. She stated that appellant choked her twice within the second or third year of their marriage. She said that they were married in 2015. Appellee stated that there was an incident after the choking incidents where appellant pulled her by the back of her hair and jerked her around because she told appellant that maybe he should "get with" a lady in their congregation that he

3

commented had a "nice rack." Appellee stated that she watched the Ring doorbell video that showed appellant at her friend's house in disguise asking questions pertaining to appellee. She said that her employer told her about the conversation the lady had with appellant in which appellant told the lady that "if she joined [appellee] in [her] rebellion that God would take his blessing away from her." Appellee was shown an email sent by appellant to her employer, and appellee stated that she did not see anything specifically in the email about appellant attempting to get her fired but that he alluded to it. Appellee stated that she took appellant's reference to the dead kitten in several emails to be "a veiled threat."

Appellant testified next. He stated that he went to appellant's residence on the date in question to see if her employer had gotten the message he had sent to her. He stated that appellee suffers from narcissistic personality disorder in which only 40 percent of what appellee says is true and that he had studied the disorder for two years. He stated that he went to appellee's residence because he wanted her employer to know what appellee does. He went on to explain that they are Jehovah's Witnesses, and he did not understand the grounds appellee relied on for separation. He denied kicking appellee out of the home. The circuit court informed appellant that what it really wanted to know was whether appellee is in danger of domestic abuse from appellant. Appellant stated that appellee was not in danger of abuse. He said that he went to the parties' mutual friend's house in disguise because no one would answer the door for him, and he had two questions he wanted answered. He denied going there to stop the pending divorce. Appellant testified that he was in the process of putting in an RV park, and he did not want appellee to "up [her] demand for money to

4

sign the divorce." However, he stated that he was contacting people to let them know that what appellee was saying about him was not true. Appellant told the circuit court that appellee sent him a text quoting a scripture condemning him and that he texted appellee back. He admitted that he sent appellee messages after the protective order had been entered because "she was [his] wife," and he wanted to warn her "that a person who is deceitful and -- and divorce their marriage -- their mate with deceitful grounds will not inherit God's kingdom. That means they will be just like the dead kitten, they won't get resurrection."

On cross-examination by appellee, appellant testified that he did not kick appellee out the home and that she actually left on her own. He attempted to play a video that he says showed appellee leaving but did not have any device on which to download the video to make it part of the record. He was able to introduce into evidence the message he sent appellee's employer.

The circuit court made an oral ruling stating that it had "absolutely no doubt as to the credibility and truth of the statements [appellee] stated here in court." It found that appellee had "absolutely established . . . the type of controlling behavior that is exactly what these situations, these order of protections, are designed for." When asked if he had any objection to an order of protection being entered, appellant responded no. The circuit court then entered the order of protection, effective for ten years. The circuit court further found that appellee "is in immediate and present danger of domestic abuse" and that appellant represents "a credible threat to the physical safety of a person named in the order of

5

protection as a family or household member and therefore [the circuit court is] granting this order of protection." The final order was entered on May 25. Appellant timely appealed.

The standard of review following a bench trial is whether the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence.[1] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[2] Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder.[3]

As his first point on appeal, appellant argues that the circuit court erred by granting an order of protection based on controlling behavior and that due process of the State of Arkansas demands that a person violate the domestic-violence statute in order to obtain an order of protection. Appellee filed for an order of protection pursuant to Arkansas Code Annotated section 9-15-201[4] of the Domestic Abuse Act. Under section 9-15-205, when a petition for an order of protection is filed under the Domestic Abuse Act, the circuit court may provide relief to the petitioner upon a finding of domestic abuse.[5] "Domestic abuse" is

---

[1]*Morales v. Garcia*, 2021 Ark. App. 438.

[2]*Id.*

[3]*Id.*

[4](Repl. 2020).

[5]Ark. Code Ann. § 9-15-205(a) (Repl. 2020).

6

defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members."[6]

Here, when the circuit court asked appellant whether he objected to an order of protection being entered, he responded no. Therefore, this response can be construed as acquiescence. It is well settled under the doctrine of invited error that an appellant may not complain on appeal that the circuit court erred if the appellant induced, consented to, or acquiesced in that action.[7]

Even if appellant's actions were not an acquiescence, we would affirm the circuit court's decision to extend the order of protection. Appellee testified about the abuse she endured during her marriage with appellant as well as what she perceived as threats following their separation. Appellant testified and tried to explain to the circuit court what he meant by the dead-kitten reference, but the circuit court did not have to believe this testimony. Appellee's testimony that she considered the dead-kitten reference in the many messages sent to her by appellant to be veiled threats was sufficient to support the circuit court's order extending the order of protection for ten years. Domestic violence does not only include actual violence; it also encompasses the fear of imminent physical harm, bodily injury, or assault. Accordingly, we affirm the circuit court's finding of domestic abuse and its decision to extend the order of protection for ten years.

---

[6] Ark. Code Ann. § 9-15-103(4)(A) (Repl. 2020).
[7] *Gould v. Gould*, 2023 Ark. App. 118, 662 S.W.3d 676.

To the extent that appellant asks us to reweigh the evidence in his favor, we will not do so. The circuit court's weighing the evidence differently than appellant wanted it to be weighed is not reversible error.[8] We do not act as super fact-finder nor do we second-guess the circuit court's credibility determinations.[9] The circuit court specifically made reference to appellant's controlling behavior, but it also found that appellee was in danger of domestic abuse by appellant. Appellant ignores the domestic-abuse finding and argues that due process requires a violation of the domestic-violence statute in order to obtain an order of protection. Appellant failed to preserve any due-process argument.

Next, appellant contends that the circuit court erred by restricting questions and testimony to domestic violence and prohibiting appellant from disputing statements made by appellee that would undermine the credibility of the witness. A circuit court's decision to admit or exclude evidence will not be reversed absent a manifest abuse of discretion.[10] The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration.[11] Further, this court will not reverse a circuit court's decision absent a showing of prejudice.[12]

---

[8]*McCord v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 244, 599 S.W.3d 374.
[9]*Id.*

[10]*Steele v. Lyon*, 2015 Ark. App. 251, 460 S.W.3d 827.

[11]*Id.*

[12]*Id.*

8

Here, the circuit court limited the testimony and evidence to issues or instances of domestic abuse because that evidence was necessary for the circuit court to decide appellee's request for an order of protection. The circuit court found that certain questions by appellant had no bearing on the issue at hand and instructed appellant on what it was interested in hearing. Instead of addressing the allegations, appellant chose to focus his attention on appellee's alleged narcissistic personality disorder and whether he kicked appellee out the home. Appellant did not deny the allegation of past physical abuse, but he did offer his own explanation for the dead-kitten reference, which the circuit court chose not to believe. We find no abuse of the circuit court's discretion in this instance.

Appellant argues that the circuit court erred by not reviewing evidence that proved the witness was not credible. He does not point to evidence in the record showing that the circuit court did not consider the evidence before it. Again, he seeks to have this court reweigh the evidence in his favor, which we will not do.

Finally, appellant contends that the circuit court erred by not allowing appellant to admit evidence proving the witness was not credible. This argument centers on appellant's alleged video evidence showing that appellee left the home on her own. Appellant was not able to proffer the evidence because he did not have a device on which to download the evidence to make it part of the record. Therefore, the evidence was not admitted or proffered during the hearing. To challenge a ruling excluding evidence, an appellant must proffer the

9

excluded evidence to permit review of the circuit court's decision.[13]  Appellant failed to proffer the evidence as he had no means in which to download the video to a hard format for the circuit court.  Thus, we affirm this point.

Affirmed.

WOOD and MURPHY, JJ., agree.

*Danny Hopper*, pro se appellant.

One brief only.

---

[13]*Campbell v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 84, 426 S.W.3d 501.