Cite as 2024 Ark. App. 70

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-22-533

| | | |
|---|---|---|
| JOSHUA GLASS | | Opinion Delivered January 31, 2024 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRTEENTH DIVISION [NO. 60DR-22-1143] |
| V. | | |
| TANYA GLASS | | |
| | APPELLEE | HONORABLE W. MICHAEL REIF, JUDGE |
| | | |
| | | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Joshua Glass challenges the final order by the Pulaski County Circuit Court extending an order of protection against him until May 6, 2030. He contends that the circuit court erred by (1) excluding evidence of appellee's prior allegations of sexual assault, (2) admitting evidence regarding appellant's disciplinary history with the Little Rock Police Department (LRPD), and (3) finding that appellant committed domestic abuse against appellee. He also challenges the circuit court's decision to award appellee attorney's fees and costs. We affirm.

Appellee sought an ex parte order of protection on behalf of herself and the parties' minor daughter, MC1, on April 4, 2022. In the petition, she alleged several instances of spousal rape and other instances of abuse. The Pulaski County Circuit Court entered an ex

parte order of protection the same day, effective until May 3. An amended ex parte order of protection was entered on April 20, effective until May 6. The hearing took place on May 6. Appellee testified about the numerous instances of spousal rape that took place between February and March 2022. She also testified about an incident on January 31, 2022, wherein appellant chased her, grabbed her arm, and subsequently locked her outside the home after she took his cell phone, went through it, and would not return it when asked. He eventually let her back into the home after she threatened to call the police. She returned the phone to him but took it again when appellant placed it on the charger. Appellant grabbed her by her legs and tried to pull her off the bed. She was able to get appellant off of her and, again, returned the phone to him. She stated that she subsequently went to sleep in one of her daughters' rooms with a knife because she was scared. She also testified that overnight between March 24 and 25, she confronted appellant about "the forced sex and the underaged girls and the comments about [her] cousin and talking to underaged girls." She testified that appellant stated that her fifteen-year-old cousin had a "banging little body" and that she "looked like a grown woman in yoga pants." She said that they got into an argument, and appellant told her that she "needed to call the police because there was a rapist in the building." She stated that appellant got "real close to [her] face" and got quiet and whispered to her, "Call the police. [And tell them] [h]e's an ex-military, ex-cop, [and] there [are] guns in the house." He also told her to tell his son, MC2, "to go hide in the closet." She testified that when she told appellant that she was scared, he mocked her by saying "[o]h, I'm so scared. I'm so scared." She stated that she felt an imminent fear of bodily harm. She

2

indicated that appellant's demeanor during this exchange was calm and that his calmness meant "[n]othing good." She said that she subsequently took her girls to Northeast Arkansas when they got out of school the next day because she was afraid. Appellee stated that she filed an incident report with the LRPD on March 29. She said that she did not report it sooner because she was scared and did not know where to go or what to do. Appellee admitted that during this time, she continued to leave appellant videos, write him notes, and send "I love you" texts. However, she insisted that these actions did not negate the fact that the abuse had taken place. Appellee testified that appellant owns over one hundred weapons, he is ex-military and ex-law enforcement, and attended both sniper and ranger school. She stated that the guns were unsecured in the home and that he would play with his weapons. She asked the court to extend the protection order to the maximum allowed by law.

On cross-examination, appellee admitted that she had been a federal probation officer for five years, and during that time, she supervised sex offenders. She said that she had also undergone six weeks of law enforcement training and was qualified with firearms. Prior to the federal job, she was a state probation officer for a little over a year. Appellee stated that her official last day as a federal probation officer was January 31 because she was terminated for not fully disclosing her level of marijuana use in college. On her application, she indicated some marijuana use, but when she talked to the background investigator, she expanded on that use. She admitted that in a letter to Chief Judge D.P. Marshall Jr., she stated she was being investigated for an integrity violation and for dishonesty. Appellee

3

testified that she was contacted by a lady who told her that the lady and appellant had had sex on January 5. She admitted that she was upset. She also said that she learned at the end of January that appellant had also had sex with someone else. She agreed that she sent text messages throughout this period to appellant expressing her love for him and her excitement about moving with him to Shreveport, Louisiana, as part of his new job as a U.S. Marshal. She also admitted sending text messages to appellant's mother and grandmother expressing her excitement to be moving to Shreveport. Appellee agreed that none of the text messages talked about the alleged rapes or assault. She said that appellant left the apartment after the March 24–25 incident at her request. She testified that she wanted him to leave because he had been messaging a fifteen-year-old girl "about her body and searching for her" and that she has daughters. Appellee admitted that she told appellant that her other daughter's father had raped her. Her attorney subsequently objected to the line of questioning. Appellant's counsel stated that the question "shows a pattern of this witness who's accused multiple people of sexually assaulting her[.]" The circuit court sustained the objection, and counsel agreed to move on. Appellee admitted that she slapped appellant after a Christmas party in 2021 while they were arguing. She said that appellant did not strike her back and that, although he had not struck her, he had grabbed her by her hair and neck.

On redirect, appellee stated that appellant had raped her at least six times. She said that she could not turn her love for appellant on and off. She testified that she and appellant communicated in more ways than just via text messages during the relevant times. She stated that appellant had been terminated from the LRPD for untruthfulness, and the circuit court

4

upheld the termination on the basis of the allegations. She also said that appellant had brought cocaine home "off the street." Appellant's counsel objected to the line of questioning for relevance, and the court sustained the objection.

Appellant testified that they were married on December 31, 2021, and that they share an eleven-month-old daughter, MC1. He stated that he was supposed to start training for the U.S. Marshal Service on April 12, but he lost his slot when LRPD received the complaint from appellee, resulting in his security clearance being rescinded pending the outcome of the investigation. He said that he knew his relationship with appellee was going to end, but he thought it would be after he finished training. He admitted that he had been unfaithful twice and that he would message other females. Appellant denied ever forcing appellee to have sex with him. He outlined, in his words, the situation that led to appellee's hitting him after the Christmas party. He denied ever hitting, pushing, shoving, or threatening to do any of those things to appellee.

Appellant testified on cross-examination that it was not possible for appellee to compartmentalize the alleged rape because he did not rape her any of the six times she alleged. He also denied the January 31 incident. However, he admitted that he told appellee during the March incident to "[c]all SWAT, tell them there is military, tell them there is ex-cops, tell them we've got weapons in the house." He insisted that he was just being sarcastic. He did not see how this could be intimidating to someone "if you know them enough to marry them." He agreed that it is possible for a husband to rape his wife, but he denied raping appellee. He stated that he was "not even going to say that the incidents occurred

5

consensually or non-consensually." He said that he had never, in any capacity, forced himself on appellee. He admitted that he was terminated from LRPD for giving an untruthful statement about damage to city property. He was also questioned whether, in the resulting circuit court order, there was information about a white powdery substance believed to be cocaine. His attorney objected, stating that it had nothing to do with his credibility. The circuit court overruled the objection. He admitted that the order listed disciplinary issues, including (1) failure to deliver a white powdery substance believed to be cocaine to the official department, (2) conduct unbecoming an officer related to three incident reports connected to domestic disturbances at his estranged wife's home, (3) failure to contact his on-duty supervisor to report an unintentional discharge of a secondary firearm in his residence, and (4) conduct unbecoming due to reckless handling or reckless damage to city property. He agreed that his disciplinary history is less than stellar. He also admitted messaging a fifteen-year-old girl on Facebook but claimed that he used to date the girl's mother when the girl was younger. Appellant admitted that he made the comment about appellee's fifteen-year-old cousin.

The circuit court granted appellee's request to have her order of protection extended. It noted that the testimony was in conflict regarding the rape but found appellee to be credible on the basis of the testimony and the witnesses' demeanor. It also noted appellant's testimony that he made the statements during the March incident about calling the police and letting them know that guns are in the house and said that this statement alone constituted domestic abuse since it was the intentional infliction of fear of imminent physical

harm, bodily injury, or assault. The final order of protection was filed on May 9, made effective until May 6, 2030. In the addendum to the order, appellee was granted custody of MC1, appellant was granted one weekly overnight visit with MC1, and appellant was ordered to pay child support in the amount of $639.45. The circuit court noted that this was subject to modification in the parties' pending divorce.

Appellee filed a motion for attorney's fees and costs on May 13 seeking $6,875 in attorney's fees and $55 in costs. She included a supporting affidavit, an invoice, and a brief with her motion. Appellant filed a response on May 22, contending that the circuit court should deny appellee's motion. Appellant filed his notice of appeal on June 1. Appellee filed a reply to appellant's response on June 2. The circuit court entered an order on July 5 granting appellee attorney's fees in the amount of $2,500 and costs in the amount of $55. Appellant filed an amended notice of appeal on July 7.

The standard of review following a bench trial is whether the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence.[1] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[2]

---

[1]*Hopper v. Hopper*, 2023 Ark. App. 504, 678 S.W.3d 602.

[2]*Id.*

7

Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder.[3]

Although listed as his third point on appeal, we first address appellant's argument that the circuit court erred in finding that he committed domestic abuse against appellee. Appellee filed for an order of protection pursuant to Arkansas Code Annotated section 9-15-201[4] of the Domestic Abuse Act. Under section 9-15-205, when a petition for an order of protection is filed under the Domestic Abuse Act, the circuit court may provide relief to the petitioner upon a finding of domestic abuse.[5] "Domestic abuse" is defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members."[6]

Here, appellee testified to numerous instances of rape committed against her between February and March 2022, and rape and sexual assault are the types of abused covered under the definition of domestic abuse. Appellant denied the conduct; however, the circuit court found appellee's testimony credible. Additionally, the circuit court found that appellant's remarks during the March incident also fell squarely within the definition. We affirm the circuit court's finding of domestic abuse and its decision to extend the order of protection

---

[3]*Id.*

[4](Repl. 2020).

[5]Ark. Code Ann. § 9-15-205(a) (Repl. 2020).

[6]Ark. Code Ann. § 9-15-103(4)(A) (Repl. 2020).

for eight years. To the extent that appellant asks us to reweigh the evidence in his favor, we will not do so. The circuit court's weighing evidence differently than appellant wanted it to be weighed is not reversible error.[7] We do not act as super fact-finder nor do we second-guess the circuit court's credibility determinations.[8]

Appellant argues that the circuit court erred by excluding evidence of appellee's prior allegations of sexual assault. A circuit court's decision to admit or exclude evidence will not be reversed absent a manifest abuse of discretion.[9] The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration.[10] Further, this court will not reverse a circuit court's decision absent a showing of prejudice.[11]

Here, by the time appellee's attorney objected to the line of questioning, appellee had already admitted that she told appellant that her other daughter's father had raped her. Appellant's counsel agreed to move on and presented no evidence that appellee had somehow lied about being sexually assaulted by an ex-boyfriend or how this fact shows that

---

[7]*Hopper, supra.*

[8]*Id.*

[9]*Id.*

[10]*Id.*

[11]*Id.*

appellee was being untruthful in her allegations against appellant. We hold that the circuit court did not abuse its discretion when it sustained appellee's attorney's objection.

Appellant contends that the circuit court erred by admitting evidence regarding appellant's disciplinary history with the LRPD. He admits that evidence concerning his truthfulness was properly admitted; however, he argues that his other disciplinary actions were irrelevant to his credibility or the allegations in appellee's petition. Although appellant's counsel initially objected to the question about the white powdery substance, once that objection was overruled, appellant was questioned about other disciplinary actions without objection. Even if the circuit court did err by allowing the questions, appellant has failed to show how he was prejudiced. The circuit court credited appellee's testimony about events over appellant's. Appellee's testimony supports the finding of domestic abuse. Thus, even if the evidence was allowed in error, it was harmless error.

Finally, appellant argues that the circuit court abused its discretion by awarding appellee attorney's fees. Upon a finding of domestic abuse, a circuit court may allow the prevailing party a reasonable attorney's fee as part of the costs.[12] Appellant contends that since the circuit court erred by finding that he committed domestic abuse against appellee, she is no longer the prevailing party, and we should reverse the award of attorney's fees. We affirm the fee award and hold that appellee is the prevailing party since the circuit court correctly found that she suffered domestic abuse at appellant's hands.

---

[12]Ark. Code. Ann. § 9-15-205(a)(5) (Repl. 2020).

Affirmed.

GRUBER and THYER, JJ., agree.

*Kamps, Ward & Griffis PLLC*, by: *Kelly K. Ward* and *Adrienne M. Griffis*, for appellant.

*James, House, Swann & Downing, P.A.*, by: *Kayla M. Applegate* and *Charley E. Swann*, for appellee.