Cite as 2026 Ark. App. 173

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-25-185

| | |
|---|---|
| GOLDEN KINSEY<br><br>APPELLANT<br><br>V.<br><br>ANITRA FORD<br><br>APPELLEE | Opinion Delivered March 11, 2026<br><br>APPEAL FROM THE OUACHITA COUNTY CIRCUIT COURT<br>[NO. 52DR-24-145]<br><br>HONORABLE DAVID C. GRAHAM, JUDGE<br><br>AFFIRMED |

### STEPHANIE POTTER BARRETT, Judge

Golden Kinsey appeals from an order of protection entered by the Ouachita County Circuit Court prohibiting him from contacting appellee, Anitra Ford, for a period of ten years and prohibiting contact with the parties' minor daughter for a period of six months. On appeal, Kinsey contends the circuit court clearly erred by (1) granting an order of protection based on alleged conduct that occurred outside the state of Arkansas; (2) finding he committed domestic abuse against Ford; and (3) finding he committed domestic abuse against the parties' minor daughter. We affirm.

## I. *Relevant Facts*

Kinsey and Ford were married on May 17, 2014, in Louisiana. One child, a daughter, was born of the marriage. Kinsey, who works in the oil field, was frequently away from home for extended periods.

In June 2024, while Kinsey was out of town for work, Ford received two videos from him that she perceived as threats to her life. As a result, Ford packed belongings for herself and the minor child and sought refuge at a domestic-violence shelter in Louisiana. When that shelter was full, she was referred to the Women's Crisis Center of South Arkansas ("the Center") in Camden, Arkansas. Ford and the minor child were admitted to the Center on July 1, 2024, and remained there until August 10, 2024. On July 23, 2024, while residing at the Center, Ford filed a petition in the Ouachita County Circuit Court seeking an ex parte order of protection against Kinsey.

In her supporting affidavit, Ford alleged that although she and Kinsey had been married for ten years, the abuse began prior to the marriage. She described incidents dating back to their engagement party where, she alleged, Kinsey slapped her and threw her phone against a wall. She further alleged that over the course of their relationship, Kinsey burned her with a curling iron, chased her with his truck, tripped her while she was pregnant, forced her out of the home at night for refusing sexual intercourse, threw objects at her, and sent threatening videos. Ford also asserted that their daughter was afraid of Kinsey and had told her teacher that Kinsey was going to shoot Ford.

An ex parte order of protection was entered on July 23, 2024, and Kinsey was served on August 5. On August 16, Kinsey filed a pro se motion to dissolve the order. In his motion, he asserted he had not seen Ford or their child since June 3, 2024, and that Ford left the marital home without informing him, leaving it in disarray. He denied any physical

altercations between them, claimed the incidents alleged in Ford's affidavit occurred more than eight years earlier, and characterized Ford as the aggressor.

A hearing on the petition was held on August 19, 2024. Shelly Otto, an employee of the Center, testified the Center serves survivors of domestic violence, domestic abuse, and human trafficking from all over the world, including individuals outside Arkansas. Otto stated she served as Ford's case manager and confirmed the dates of Ford and the minor child's residency.

Ford then testified. The court limited Ford's testimony to instances of abuse that occurred within the last three years. Ford described multiple occasions during that period when Kinsey threatened to shoot or kill her. She testified that Kinsey frequently returned home intoxicated and she suspected drug use after finding paraphernalia on their property. She stated Kinsey had access to firearms and she believed he would kill her.

Ford also described an incident that occurred in the presence of the minor child. She testified that while she was fixing the minor child's hair and Kinsey was tying the minor child's shoe, she tapped the brim of Kinsey's hat. According to Ford, Kinsey reacted by twisting her arm and throwing a chair against a wall, narrowly missing the child.

Marilyn Randle, Ford's first cousin, testified next. Randle resides in Louisiana and stated she had frequent communication with Ford over the preceding three years. She recalled that Ford and the minor child stayed with her for several days after Kinsey struck Ford. Randle testified that Ford wanted to make the marriage work but was afraid. Randle

also stated she viewed videos in which Kinsey threatened Ford and observed one video of Kinsey slapping Ford. Randle testified she cried upon seeing that Kinsey had slapped Ford.

The circuit court then conducted an in camera interview of the minor child outside the presence of the parties. When asked whether anything about living with Kinsey made her afraid, the minor child responded, "Well, my – it was kind of like my worstest nightmare maybe." She recounted the chair-throwing incident, stating her parents were arguing loudly and she saw Kinsey twist Ford's arm before throwing a chair that nearly struck her in the face. She also described an incident in which Kinsey slapped Ford in the car. Additionally, she testified Kinsey had struck Ford more than once––once with a toy golf club and once with a belt.

Kinsey testified in his own defense. He denied abusing either Ford or their minor child, asserting instead that he had defended himself against Ford's alleged physical aggression. He testified that Ford "ran away" while he was at work and that she was not in immediate danger. Kinsey acknowledged he smoked marijuana and initially stated he possessed a medical-marijuana card. After the circuit court announced its ruling, however, he admitted this statement was false and he did not have such a card. Kinsey testified the chair-throwing incident arose from a disagreement after he told their minor child that when "your husband comes home, greet him at the door, you know, make sure the house is clean, you know, tell him you love him," and Ford objected. He further testified he had filed a petition for divorce in Louisiana.

At the conclusion of the hearing, the circuit court granted Ford's petition and entered an order of protection prohibiting Kinsey from contacting Ford for ten years and from contacting the minor child for six months. The court further ruled that before visitation could be reinstated after six months, Kinsey would be required to complete an online parenting course and pass a ten-panel drug screen. Kinsey objected to the ruling, characterizing it as "absurd." A final order of protection was entered that same day.

## II. *Discussion*

Our standard of review following a bench trial is whether the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Baltz v. Baltz*, 2021 Ark. App. 202, at 4, 624 S.W.3d 338, 340. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Disputed facts and credibility determinations are both within the province of the fact-finder. *Id.*

## A. Order of Protection

Kinsey first argues the circuit court erred in granting an order of protection based on alleged conduct that occurred outside the state of Arkansas.

Arkansas Code Annotated section 9-15-201(b) provides that a petition for an order of protection "shall be filed in the county where the petitioner resides, where the alleged incident of the abuse occurred, or where the respondent may be served." The statute further defines "[c]ounty where the petitioner resides" as the county in which the petitioner physically resides at the time the petition is filed and expressly includes a county where the

5

petitioner is located for a short-term stay in a domestic-violence shelter. Ark. Code Ann. **§** 9-15-103(2) (Repl. 2020).

The record reflects Ford resided at the Center from July 1 through August 10, 2024. She filed her petition on July 23, 2024, during her residence in Arkansas. The filing of her petition was therefore expressly authorized by statute. The circuit court did not err in exercising jurisdiction under the Domestic Abuse Act.

To the extent Kinsey now contends the circuit court lacked personal jurisdiction over him, that argument is waived. Unlike subject-matter jurisdiction, which can be raised at any time, including for the first time by this court sua sponte on appeal, personal jurisdiction may be waived by the parties. *See Rowell v. White & Assocs., Inc.*, 302 Ark. 225, 788 S.W.2d 489 (1990); Ark. R. Civ. P. 12(h). Under Arkansas Rule of Civil Procedure 12(h), a defense of lack of jurisdiction over the person is waived (A) if omitted from a motion in the circumstances described in subdivision (g),[1] or (B) if it is neither made by motion under this rule nor included in the original responsive pleading. Kinsey did neither. Instead, he voluntarily appeared and participated in the proceedings without objection to the court's

---

[1]Subsection (g) states that a party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. If a party makes a motion under this rule, but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) (defense of failure to state facts upon which relief can be granted, etc.) hereof on any of the grounds therein stated.

exercise of jurisdiction. Having failed to preserve the issue below, he cannot raise it for the first time on appeal.

B. Findings of Domestic Abuse

Next, we address Kinsey's argument that the circuit court erred in finding he committed domestic abuse against Ford and the parties' minor child.

Ford filed an order of protection pursuant to the Domestic Abuse Act, Arkansas Code Annotated sections 9-15-201 through -407 (Repl. 2020 & Supp. 2025). Under section 9-15-205, a circuit court may grant relief upon a finding of domestic abuse. Ark. Code Ann. § 9-15-204 (Repl. 2020). "Domestic abuse" is defined as "physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members." Ark. Code Ann. § 9-15-103(4)(a) (Supp. 2025).

At the hearing, Ford testified to multiple incidents occurring within the preceding three years that constituted either physical harm or the infliction of fear of imminent physical harm. Although Kinsey denied the allegations, the circuit court expressly found Ford's testimony credible and determined the incidents she described fell within the statutory definition of domestic abuse. We defer to the circuit court's superior position to assess the credibility of witnesses and the weight to be accorded their testimony. *Hobson v. Hobson*, 2025 Ark. App. 311, 715 S.W.3d 890. To the extent Kinsey asks this court to reweigh the evidence or substitute our credibility determinations for those of the circuit court, we decline to do so. The circuit court's decision to credit Ford's testimony over Kinsey's does not constitute

7

reversible error. *See Hopper v. Hopper*, 2023 Ark. App. 504, 678 S.W.3d 602. We do not act as super fact-finder, nor do we second-guess the circuit court's credibility determinations. *Id.*

With respect to the minor child, she testified in camera that Kinsey struck her with a belt and, on another occasion, threw a chair during an argument with Ford that nearly struck her in the face. As Ford notes, we have previously held a circuit court is not required to view a defendant's violent behavior toward their spouse in isolation from their behavior toward a minor child. *See Dixon v. Dixon*, 2022 Ark. App. 439, at 11, 655 S.W.3d 520, 526. In *Dixon*, we acknowledged that exposure to domestic violence within the home may itself support a finding of domestic abuse as to a minor child. Here, the evidence demonstrated that Kinsey's conduct occurred within the family home and in the minor child's presence over a period spanning much of her life. This case is also distinguishable from *Morales v.* Garcia, 2021 Ark. App. 438, in which we held merely witnessing domestic abuse, even if it negatively affects the child, is insufficient to justify extending an order of protection to the child. Here, however, the circumstances are materially different. The minor child testified she was afraid of her father because he hurts her. At a minimum, Kinsey's act of throwing a chair in the minor child's direction demonstrates a reckless indifference to the risk that the minor child could become collateral damage in his acts of domestic abuse against Ford. It was not clearly erroneous for the circuit court to conclude that such conduct constituted either physical harm or the infliction of fear of imminent physical harm to the child. *See, e.g., Baltz v. Baltz*, 2021 Ark. App. 202, 624 S.W.3d 338.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*Debra Reece Johnson*, for appellant.

*Ebony Gulley*, for appellee.